Kuhn v. Newman.

KUHN v. NEWMAN.

1. **Partnership:** REPLEVIN. A contract provided that K. should furnish and replenish a stock of merchandise which N. was to take charge of and sell, deducting from the proceeds the expenses of the business and a certain fixed sum for himself; the profits of the business to be divided equally, and N. to take his share thereof, at the expiration of the contract, out of the merchandise on hand: *Held*, that the contract created a partnership, notwithstanding a stipulation that the goods were to remain the property of K., and that K. could not maintain replevin for the goods until after a settlement.

2. ——: EQUITABLE JURISDICTION. Equity having exclusive jurisdiction of partnership settlements, evidence to show that N. had no interest in the merchandise, because no profits had accrued, was not admissible in the action of replevin.

*Appeal from Polk Circuit Court.*

FRIDAY, OCTOBER 25.

ACTION to recover the possession of personal property. Plaintiff claimed to be the owner, and as such entitled to

the possession. The defendant denied that plaintiff was the owner or entitled to the possession, and also claimed that he was rightfully in possession, and that he was entitled thereto as a partner of the plaintiff.

There was a trial by jury, and, under the instructions of the court, there was a verdict for the defendant, and judgment being rendered thereon, plaintiff appeals.

*Phillips, Goode & Phillips,* for appellant.

*Finch, Sickmon & Snelling* and *Barcroft, Given & Drabelle,* for appellee.

SEEVERS, J.—The plaintiff and the defendant entered into the following contract:

"This contract, made and entered into as of the 8th day of October, 1874, by and between Isaac Kuhn, of Des Moines, Iowa, of the one part, and M. Newman of the other part, witnesseth: That is to say, the said Isaac Kuhn is to furnish merchandise, chiefly clothing, sufficient to open a salesroom, and keep the same properly stocked for business, in a room now leased, heretofore occupied by J. D. Rambo, at the corner of Walnut and Sixth streets, in said city; said clothing house to be known and designated as the Central Clothing House. The merchandise to be and remain the property of the said Kuhn. The sales to be conducted by the said Newman, who agrees to give said business his undivided attention. A book shall be kept by said Newman, which shall show all goods received in the store, and the cost of same at store, and when any part of said merchandise is sold said sales are also to be entered in said book as said merchandise is sold, and what sold for; said book to be a complete record of the receipts of merchandise and the sales thereof; said book to be balanced up daily. A book shall also be kept showing all moneys received and laid out and expended; the entries to be full and items plainly given. Said book to be balanced daily, and the

cash at the close of each day's business, less expenses, is to be paid over to said Isaac Kuhn.

"The said Newman is to sell said merchandise for cash only, and is not to permit any part thereof to be sold and removed from the store unless paid for. The said Kuhn has the privilege of examining the books at any time he shall choose so to do. The expense of every kind, including rent and clerk hire, is to be deducted from the profits. The profits, if any, are to be divided between the said Kuhn and the said Newman, share and share alike, and all losses in the business, of every kind, is also to be borne by the parties equally. The said Newman may draw from said business the sum of fifty dollars ($50) per month, monthly during this contract, but not more than said sum of money. The excess, if any, of his share of the profits is to remain in said business. This agreement to continue in full force six months from this date, and as much longer as the parties may agree, and to be in force and effect should business be continued for a longer period than six months. At the close of business under this agreement an account shall be taken of the entire business, and if there has been no profits, the said Newman shall make good one-half of the losses, and pay back the fifty dollars per month drawn from the business by him. If the profits of such business are not such so that the share of such profits of the said Newman should exceed the sum of fifty dollars per month drawn from the business by him, then and in such case the excess of said Newman's share in said profits he is to take out of the average merchandise then on hand in merchandise.

[Signed] "Isaac Kuhn,
"M. Newman."

There was indorsed on the contract the following:

"And now, April 1, 1875, this contract is renewed and continued for one year from and after this date, without change or alteration, except in this: A reduction of five per cent off

of all bills of goods from this date received through the store of said Kuhn."

[Signed]        "ISAAC KUHN,
            "M. NEWMAN."

"And now, April 1, 1876, this contract, as originally made on the 8th day of October, 1874, is continued and renewed for the period of two years from and after this date, subject to the right of said Isaac Kuhn, to terminate the same at the end of one year, and the said Kuhn also reserves the right to sell out at any time during the term of this renewal, upon making a reasonable arrangement with said Newman. The original contract by this renewal is otherwise not changed, except goods shall be furnished at seven and one-half per cent in addition to eastern cost.

[Signed]        "ISAAC KUHN.
            "M. NEWMAN."

There was evidence tending to show that, about the 1st day of April, 1877, and prior to the commencement of this action, the plaintiff demanded a settlement and possession of the goods furnished by him under the contract, and the same was refused. The plaintiff offered to prove at the time the action was commenced the defendant was not entitled to any profits, and that he had drawn out of the concern all he was entitled to under the contract. The court refused to permit such evidence to be introduced, and ruled "that in order for the plaintiff to maintain this action of replevin that a settlement between him and the defendant was a condition precedent before he could maintain the action of replevin."

The court also instructed the jury as follows:

"It appearing by the evidence introduced on the trial of this cause that prior to the commencement of this suit there had been no settlement of the rights and interests between the plaintiff and defendant under the contract between them, which is in evidence, as to the property in controversy and their dealings, I instruct you, as a matter of law, that before

the plaintiff can maintain this action he must show that there has been a settlement with defendant, and hence you will find for defendant, and assess the value of the property in question."

The foregoing rulings were excepted to by the plaintiff, and have been assigned as error.

I.   The contract provides that plaintiff shall furnish the goods, and the defendant his time, and the profits and losses are to be shared equally.   This is a very common and usual contract of partnership, and it must be held, we think, that these persons were partners, unless there is some other provision of the contract, of a controlling nature, which changes what is regarded as the established rule. There is but a single clause which it is claimed has this effect, and that is that "the merchandise [is] to be and remain the property of the said Kuhn;" the claim being that this clause gives the plaintiff the right of possession whenever the contract has been legally terminated, independent of the state of the accounts or the interest of the defendant in the goods.   Does it have this effect?   We think not.   The whole instrument must be read and considered together for the purpose of determining the proper construction.

1. REPLEVIN: partnership.

The defendant's share of the profits over and above fifty dollars per month was to remain in the business, and all money received from the sale of goods was to be paid over daily to the plaintiff.   Therefore the profits of the defendant must, as a matter of course, have been invested in or represented by goods on hand; and it is provided, whenever the contract is terminated, such profits shall be taken out of the "average merchandise then on hand in merchandise."

For aught that appears or can be legally known in this action, the defendant may have been entitled to one-half or all the goods on hand, when this action was brought, as his share of the profits.   The plaintiff may have received all he was entitled to in cash.   In other words, the contract provided

a way by which the defendant might become the owner of the goods.

In the light of these several provisions, the one in relation to the goods remaining the property of the plaintiff must be construed to mean that they so remained until paid for, or, rather, until they became the property of the defendant under the terms of the contract. The defendant was rightfully in possession, and it is provided that at the close of business there shall be a settlement. The object and purpose of this evidently was to ascertain the interest of each in the goods remaining on hand. 'The defendant was entitled to retain possession until such interest was ascertained. A demand for the goods could not make it wrongful; nor could a demand for a settlement, and a refusal by the defendant, have this effect, for in such case the law provides a way to obtain the required settlement, if the parties are unable or unwilling to make one. This course should have been pursued.

Conceding the contract in *Bassett* v. *Armstrong*, 6 Mich., 397, is in legal effect like the one under consideration, yet it has no bearing on the case at bar, because the facts are entirely different.

II. It is insisted that the evidence offered should have

2. ——: ——:  
equitable ju-  
risdiction.

been admitted, and that it could have been shown thereby that defendant had no interest in the goods.

This would have involved a settlement and adjustment of the partnership, as between the partners. This cannot be done at law. Equity has exclusive jurisdiction of such an action.

Besides this, it is provided by statute as follows : "The action [to recover personal property] shall be by ordinary proceedings, but there shall be no joinder of any cause of action not of the same kind, nor shall there be allowed any counterclaim. Code, § 3226.

Whatever may be the rule in other States, we think under this statute the only question was as to the right of possession,

and the value of such right as the same could be ascertained and determined in an action at law.

As it was incompetent to investigate the accounts and determine the extent of the interest of each, and as it was conceded the goods could not be returned, the value of defendant's right must be the value of the property wrongfully taken from his possession.

Whether the judgment stands in the place and stead of the goods in the hands of the defendant, and whether the plaintiff can, in the proper action, have the interest of the former therein ascertained, are questions not before us.

But, if no such remedy exists, the seeming hardship, on the plaintiff's theory of the state of the accounts, cannot, without violating what we regard as settled legal principles, be remedied in this action.

There is no error in the rulings of the Circuit Court.

AFFIRMED.