The Illinois Malleable Iron Company v. J. W. Reed, *et al.*, Appellants.

**Partnership.**   A partnership, as against third persons, is created by an agreement whereby the parties of the first part are to furnish a specified sum in installments during the ensuing year for the purpose of manufacturing a specified number of articles of a pattern invented by the second party, and to share the profits in a certain proportion with the second party, notwithstanding a further provision that if the venture is not a success the first parties may declare the agreement of no effect and receive such part of the amount contributed as may be made out of the sale of manufactured articles.

*Appeal from Ida District Court.*—Hon. S. M. Elwood, Judge.

Friday, May 28, 1897.

ACTION on an account. Judgment for plaintiff, and the defendants appealed.—*Affirmed.*

*Chas. S. Macomber* for appellants.

*H. L. Hastings* for appellee.

GRANGER, J. — The defendants are J. W. Reed, John T. Hallam, George M. Riddle, and A. N. Hull. The suit is against the defendants as a firm, and also individually. The controlling question in the case is whether the defendants did constitute a partnership, so that the defendants Reed, Hallum, and Riddle are liable for its debts. In February, 1893, the defendants Reed, Hallum, and Riddle, as party of the first part, and defendant Hull, as party of the second part, entered into a written agreement whereby the first party was to furnish the sum of one thousand five hundred dollars in installments, as it might be needed, during the months of March, April and May of that year, for the purpose of manufacturing and having manufactured fifty corn planters of a pattern and style invented by the second party. It was further agreed that, if the corn planters so manufactured proved a success, so as to return a reasonable profit, the first party would put in further sums for such manufacture in 1894, and thereafter as long as the business should prove practicable and profitable. The second party agreed to contribute his inventions, present and future, with the right to manufacture and sell the same, and to devote his time and attention to the manufacture of the planters, without charge for such service to the party of the first part. The contract then provides for a division of profits on a basis of sixty per cent. to the first party and forty per cent. to the second party; the profits to be what remained after paying all expenses of carrying on the business, and after deducting the contributions,

whether of money or property of the parties. After a provision as to the division of the property in case of "dissolution or winding up of said business," is the following, on which reliance is placed by appellant: "It is further understood by and between the parties hereto that whereas, the said corn planter is a new invention and untried machine, and may fail in the operation of a successful machine, and in its usefulness as a corn planter, and be impractical to manufacture; and whereas, the contribution by the party of the first part of the said sum of one thousand five hundred dollars, for the manufacturing of the said fifty corn planters aforesaid, is made for the purpose of testing the practicability and usefulness of said planters: Now, therefore, if said planters prove ineffectual as such, and fail in being practical machines, then, in such event, the party of the first part may declare the foregoing contract null and of no effect, and said party of the first part shall receive back the said sum of one thousand five hundred dollars, or so much thereof as may be made out of the sale of fifty corn planters. But, in the event said planters prove to be of effect, profitable and practical to manufacture and sell upon the market, then the said one thousand five hundred dollars shall be added to any other contributions of the party of the first part, and their sum considered contribution of the said first party." The contract has no provision as to a name in which the business was to be carried on, and it was done in the name of Hull, who was by the contract to transact the business. The articles for the payment of which the suit is brought were contracted for by Hull and received by him. When the goods were purchased, plaintiff was told for whom the purchase was made. This occurred during the period provided in the contract for testing the practicability and usefulness of the planters. It is thought that the written contract did not create a partnership. That it did, there is not, to our minds, room for doubt.

Every essential element of a contract for a partnership is included in the writing. It does not say contract, but it provides for doing a well-defined business in the manufacture and sale of planters, on the basis of one party furnishing the capital and the other the business management, with a division of profits and losses. When parties thus conduct such a business, the law makes it a partnership. It is thought that the provision as to the right to revoke if the machine did not prove practicable or profitable operated to avoid a partnership till the planter should so prove. Not so. The contract only gave the right to end the relation in that event. If it did so prove, then the relation was to continue. The legal relationship was to be the same throughout, with simply a right to end it under certain conditions. There is some complaint as to the evidence of Hull to show how the business was conducted, and as to the contract. It was entirely proper to show by parol how the business was done, and what was done, including the purchase. Hull was the agent of the firm. His testimony as to the meaning of the contract, if entirely disregarded, could not change the result. The fact of the partnership conclusively appears from the contract. There is no dispute of fact in the case.—AFFIRMED.