MARY E. WRIGHT, Appellant, v. GEORGE REED, Adminis-
    trator of the Estate of Ansel Wright, Deceased,
    Appellee.

Claim Against Estate; EVIDENCE: SUBMISSION TO JURY.  Evidence
1    in support of a claim for services against an estate considered
     and found sufficient to entitle claimant to a submission of the
     issues to the jury.

Evidence; EXCLUSION OF: ERROR.  It was error to preclude claim-
2    ant from testifying to a conversation in her presence between
     deceased and another person in relation to the subject matter
     of the suit.

*Appeal from Tama District Court.*—HON. OBED. CASWELL,
                          Judge.

                WEDNESDAY, OCTOBER 29, 1902.

    FROM a judgment refusing the allowance of a claim
against the estate of Ansel Wright, deceased, the plaintiff
appeals.—*Reversed.*

    *Struble & Stiger* for appellant.

    *Caldwell & Walters* for appellee.

    WEAVER, J.—Plaintiff and Ansel Wright were children
of Jonathan Wright, who died July 17, 1898.  During the
last two years of the life of said Jonathan and his wife,
plaintiff performed valuable services in nursing and caring
for them.  The claim here in controversy is based on the
theory that these services were performed at the request
of Ansel Wright, and under circumstances which rendered
him liable to make a reasonable compensation therefor.
Ansel Wright has since died, and the claim was presented
by plaintiff for allowance against his estate.  Allowance

being resisted, a jury was impaneled, and at the close of the testimony the court directed a verdict for defendant. Judgment was entered accordingly.

I.   We will first inquire whether the evidence, as admitted by the court, made a case which should have been submitted to the jury.   There is testimony tending to show

1. CLAIM against an estate; evidence: submission to jury.

that plaintiff is of adult years, a professional nurse, and for at least a year or two prior to the time in question had been away from her father's home supporting herself in the practice of her profession; that the father and mother lived in the same house with their son Ansel; that, upon the parents becoming ill, Ansel sent for his sister, and requested her to come and care for them; and that in response to his request she did come and perform the service for which payment is demanded.   There was also testimony to the effect that under the will of Jonathan Wright his son Ansel received more than an equal share in the estate; that on different occasions Ansel had said that his father had given him this extra amount in consideration of his caring for his parents; that he also said that his wife was not able to care for the old folks in their sickness and do her other work, and, as he could not himself be in the house with them all the time, he sent for plaintiff to come and care for them; that he had to have some one to care for the old folks, as his wife could not do it, and they would rather have plaintiff than a stranger.   That plaintiff did perform the service there is no dispute.   The only question is whether a sufficient showing was made to justify a jury in finding the estate of Ansel Wright liable to make payment therefor.

The defense is based upon three propositions:   (1) That by this claim plaintiff seeks to establish an agreement by Ansel Wright to pay the debt of another, and there is shown no written memorandum or contract signed to that effect; (2) that the services were rendered by plaintiff for Jonathan Wright, and her claim, if any, is

against his estate; and (3) that the services were rendered
by plaintiff voluntarily, and as a member of her parent's
family, and without expecting compensation.    The points
thus made may be considered together.    If it be true that
the record discloses an attempt to make the estate of Ansel
Wright answer for the debt of his father, then, of course,
the statute of frauds is an impassable barrier to the allow-
ance of plaintiff's claim, and the action of the court in
directing a verdict is right.    But such was not, as we un-
derstand, the theory of the claim presented.    While it is
true that the work performed was the caring for and nurs-
ing of Jonathan Wright and wife, it is claimed to have
been so rendered for Ansel Wright, and at his request.    If
so, then the debt, if any, was the debt of the latter, and
plaintiff was entitled to have the jury pass upon her claim.
We think this theory of her demand is not without support
in the testimony.    She had left home, and was supporting
herself.    The parents were living under the same roof
with Ansel.    His own statements tend to show the exist-
ence of some agreement or understanding with his father
by which, in consideration of what he called the "lion's
share" of the property, he was to care for his parents in
their declining years.    When sickness came upon them,
and he and his wife were unable to give them the care
they needed, he sent for his sister to wait upon and nurse
them.    In the absence of any other showing, we see no
reason why the law will not imply a promise on Ansel's
part to pay the reasonable value for the services thus ren-
dered at his request.    It is, of course, undeniable that, if
plaintiff cared for her parents simply as the voluntary
service of one member of a family to another, or simply as
a matter of love, or from sense of duty, and without any
understanding or agreement contemplating payment for
her labor, then neither estate is liable for her claim.    There
was testimony tending to support this theory of the

defense, but its weight and value were for the jury to determine. It was error, therefore, to direct a verdict.

II. Plaintiff being a witness upon the stand in her own behalf, and having stated that she was present at a conversation between Ansel Wright and Judge Struble, was asked by her counsel: "In that conversation between your brother and Judge Struble, did your brother state anything with reference as to what he was to do, if anything, for 26½ acres of ground that he had got under your father's will in addition to what the other children had got? If so, state the whole talk between him and Judge Struble touching the matter." To this an objection was sustained as being irrelevant, incompetent, and tending to show a personal transaction and communication between the plaintiff and the deceased brother. She was then asked: "In that conversation, state what, if anything, was said by your brother in regard to your services,—at whose instance they were rendered, and who was to pay for them, and why, and all he said about the matter." To this the same objection was sustained, and the answer excluded. The witness should have been permitted to answer. Any statement by the deceased in his lifetime as to the circumstances under which the sister rendered the services, and at whose instance, and whether they were to be paid for, is certainly both relevant and competent in her behalf. *Middleton v. Middleton*, 31 Iowa, 151; *Mahaska County v. Ingalls*, 16 Iowa, 81. It is also well established that the rule which precludes a party from testifying to personal transactions and communications with a person since deceased does not apply to communications made to another in the party's presence. *Smith v. James*, 72 Iowa, 515; *Johnson v. Johnson*, 52 Iowa, 586; *Mayes v. Turley*, 60 Iowa, 407; *Lines v. Lines*, 54 Iowa, 600. It is unnecessary to consider other alleged errors argued by counsel. In most instances the rulings were correct, and in others they are manifestly

*2. Evidence: exclusion of: error.*

governed by the conclusions we have already announced, and will readily be avoided upon a new trial.

For the reasons above given, the judgment of the district court is REVERSED.