JOHN S. FLORENCE, Appellant, v. A. L. FOX, Appellee.

**PARTNERSHIP:** **The Relation—Contract of Lease Not Partnership.** Farm contracts or agricultural agreements by which the owner of land contracts that the land shall be occupied by another, under an arrangement that each party shall furnish a certain portion of the seed, implements, and stock, and the products shall be divided in a certain manner, will not, in the absence of clear evidence to the contrary, constitute a partnership. So held where the operation of a cane mill, incidental to a lease, was held not to render the landlord and tenant partners.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

JUNE 23, 1922.

ACTION at law, wherein plaintiff seeks to recover damages from defendant for personal injuries. Trial to a jury, and at the close of plaintiff's testimony, the court directed a verdict for the defendant. Plaintiff appeals.—*Affirmed.*

*S. V. Reynolds, A. J. Walsmith,* and *McCoy & McCoy,* for appellant.

*J. A. Devitt* and *Shangle & Waggoner,* for appellee.

PRESTON, J.—The petition alleges that defendant and one Beason were a copartnership, owning and operating a sorghum mill upon the premises of the defendant, and that plaintiff was employed by them to work at said mill, and while so employed in the act of feeding cane into the mill, his hand was drawn into the unguarded rollers and injured; that defendant was negligent in not providing proper guards at and upon the rollers, and in failing to provide belt shifters or other mechanical contrivances to throw belts off and on pulleys, as provided by statute, and in failing to provide plaintiff a safe place to work.

The answer is in general denial, and that the only relation existing between him and Beason at any time was that of landlord and tenant; that defendant had nothing to do with the hiring of plaintiff; and that, if plaintiff had been so hired, it was done by said Beason; that plaintiff assumed the risk; and that his injury was the result of contributory negligence.

For reply, plaintiff says that, in his employment by defendant, through Beason, it was stipulated that the defendant would pay one half of plaintiff's wages; denies defendant's plea of assumption of risk and contributory negligence; and states further that plaintiff notified defendant of the unguarded condition of the rollers, and was promised by defendant that it would be properly equipped, and that, relying upon said promises, he continued in the work until he was injured.

Plaintiff was injured September 16, 1919. He was 71 years of age, now living at the county farm. At the time he was injured, he was feeding cane into the mill, when some of the cane became tangled or twisted around his hand, and drew it in. He does not claim that he had any conversation with the defendant

in regard to his employment, or in regard to the unguarded condition of the rollers, or any promise to remedy. Over objection that it was hearsay, he testifies to the conversation with Beason as to his employment, and describes the mill, and says that it was not guarded; that it was a three-roller mill. He gives his experience with other mills, and says that he had been engaged in feeding cane mills, off and on, all his life. He tells how he was hurt, pushing with the left hand the stalks he had in the right hand, and says he pushed until the right hand went into the roller; that, when the cane gets started through the mills, the rollers draw the cane in; that it went through itself; that the mill was run by a gasoline engine; that he had done some of the stripping of the cane before. As to the conversation with Beason in regard to his employment, plaintiff testifies that Beason said that Mr. Fox was to be the paymaster, that witness would have to work under those conditions; that thereafter, he went right and started to work at Fox's place.

"He said Mr. Fox wanted me to come and help take care of the cane and feed the mill; worked there in the cane the day before, on the farm. Beason was the man in charge of the business there; he was there on the place."

As we understand the record, plaintiff was grinding cane which had been raised on the premises leased by defendant to Beason, although the record is not entirely clear. The record is:

"Q. And how long had you been working there, before this morning that your hand was hurt? A. The day before. Q. And you had been working around there on the farm of Mr. Beason? A. Working there in the cane."

It is argued by the plaintiff that defendant and Beason were operating a custom cane mill for profit. We do not so understand the record, and find nothing in the evidence to indicate that such was the fact. Appellant further states and argues that the operation of the cane mill was an out-and-out manufacturing enterprise, and had nothing to do with, nor was it incident to, their farm lease. We think appellant is laboring under a misapprehension of the record in regard to this. The agreement between defendant and Beason in regard to the cane

mill in question was included in or made a part of a written lease between defendant and Beason, by which defendant, as party of the first part, leased to Beason 120 acres of land for one year from the 1st of March, 1919; and recites that second party, in consideration of the leasing of the premises, as above set forth, covenants and agrees with the first party to pay rent for the same in the manner following,—that is to say, as per slip attached thereto. This slip provides that first party is to furnish the cows which are to be cared for on the place, and all calves are to be fed until they are old enough to live on the grass, when first party is to remove them; the milk and cream to be accounted for, and first party to have one half of the proceeds. Each party to furnish, share and share alike, of the hogs and brood sows, and share alike in the profits and increase from same, and both parties to share and share alike in all poultry raised on the place. First party sells to second party one half of the rye now growing on the place for $20, and second party is to pay for same in work on the place during the year. First party is to furnish binder, and both parties are to pay all expense of threshing, share and share alike, including board of help. First party furnishes the gasoline engine, and second party furnishes a cane mill, and each is to pay one half of the expense of same. Both parties must be informed of all sales of stock or buying of stuff for the farm, and each has equal rights. Second party is to have a suitable garden patch, and the fruit from the orchard. Second party is to furnish a team, and same is to be fed on the place. In case more horses are needed, first party will furnish them during the time needed. The lease contains other and usual covenants; that second party shall yield possession of the premises in as good condition, etc.; that second party is to farm the premises in farm-like manner, and raise the greatest amount of grain that the nature of the soil and the season will permit; that second party is to preserve and protect fruit and ornamental trees from injury, and keep hedges and fences in repair. It also provides that the grain raised shall not be sold until the rent is paid, and contains other provisions.

Appellant argues the questions of negligence, contributory

negligence, assumption of risk, and so on; but appellee says that there is but one question in the case, and that is whether defendant and Beason were partners, and concedes that, if it be so held, the case should have gone to the jury. Appellee cites *Ault Co. v. Baker,* 26 Ind. App. 374 (58 N. E. 265), *Field v. Schricher,* 14 Iowa 119, 122, and *Ditson v. Ditson,* 85 Iowa 276, 282, to the proposition that the construction of the contract was a question of law for the court, and that it was for the court to determine whether it constituted a partnership contract, and was so intended by the parties. This is particularly so where the contract is in writing and is unambiguous, as in the instant case. 20 Ruling Case Law 849.

Plaintiff has the burden to show the existence of a partnership. 20 Ruling Case Law 849. There are several tests usually relied upon to determine whether a partnership exists, one of which is the intention of the parties. 20 Ruling Case Law 831. In *Lutz v. Billick,* 172 Iowa 543, 546, it is said that this is the crucial test. It will be observed that nowhere in the lease do the parties refer to the arrangement as a partnership. This of itself is not necessarily controlling. The defendant, as the owner of the farm, is presumably the responsible party financially. If a partnership existed, it might be possible for the tenant, within the scope of the partnership, to purchase property and make the owner of the land responsible therefor in an amount largely in excess of the rent, and each might be responsible for the torts of the other, committed within the scope of the agency. The courts hold quite generally that there are obvious reasons for holding that farm contracts or agricultural agreements, by which the owner of land contracts with another that such land shall be occupied and cultivated by the latter, each party furnishing a certain portion of the seed, implements, and stock, and that the products shall be divided at the end of a given term, or sold and the proceeds divided, shall not be construed as creating a partnership between the parties. Such agreements are common in this country, and are usually very informal in their character, often resting in parol. In the absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to such an agreement in-

tended to assume the important and intricate responsibility of partners, or to incur the inconveniences and dangers frequently incident to that relation. As supporting this proposition, without discussing the cases, the following may be cited: *Shrum v. Simpson*, 155 Ind. 160; *Bradley v. Ely*, 24 Ind. App. 2 (56 N. E. 44); *Williams v. Rogers*, 110 Mich. 418; *Cedarberg v. Guernsey*, 12 S. D. 77; *Bowers v. Graves & Vinton Co.*, 8 S. D. 385; *State v. Superior Court*, 108 Wash. 443 (184 Pac. 348); *Miles Co. v. Gordon*, 8 Wash. 442; *Parker v. Fergus*, 43 Ill. 437; *Smith v. Schultz*, 89 Cal. 526; *Wagner v. Buttles*, 151 Wis. 668 (139 N. W. 425); *Rowlands v. Voechting*, 115 Wis. 352; *Reeves v. Hannan*, 65 N. J. Law 249; 20 Ruling Case Law 843. See, also, *Cudahy Pkg. Co. v. Hibou*, 18 L. R. A. (N. S.) 975, and note, 1042.

Another test of the existence of a partnership is founded on the answer to the question whether the supposed partners acquired any control, as owner, over the profits, while they remained undivided. 20 Ruling Case Law 829. There is nothing in the record in the instant case to show that defendant had any control, as owner, over the profits, had there been any, while they were undivided, or that he had anything to do with the management of the farm, including the sorghum mill. As said in one case, the defendant was interested only in the proceeds, and this he was to have as rent for his land. Neither did defendant have any interest in the profits as such, nor any interest in the crops or property on the farm generally, except that it appears that he owned the gasoline engine and helped to furnish the hogs and cows. See cases in 18 L. R. A. (N. S.), supra, at 1042.

Another test is that of community of interest. Doubtless every partnership is founded on a community of interest, but not every community of interest necessarily constitutes a partnership. It has been held that the salient features of an ordinary partnership are a community of interest in profits and losses, a community of interest in the capital employed, and a community of power in administration; that there must be such community of interest as enables each party to make contracts, manage the business, and dispose of the whole property. 20

Ruling Case Law 830. It is true, of course, that there may be exceptions to some of these rules: for instance, one may agree to furnish all the capital, or define the specific duties of each in regard to the management, etc. There is nothing in the instant case to indicate that defendant would have any right to dispose of the property on the farm.

Another test is that there must be an agreement to share in losses, as well as profits. It seems to be now well settled that participation in the profits does not constitute a partnership in respect to the adventure from which the profits arise, and this court is committed to the doctrine that there must be a share in the losses. *Richman v. Richman,* 190 Iowa 462; *McBride v. Ricketts,* 98 Iowa 539; *Porter v. Curtis,* 96 Iowa 539; *Richardson & Co. v. Carlton,* 109 Iowa 515; *Haswell v. Standring,* 152 Iowa 291; *Francis v. Francis,* 180 Iowa 1191, 1209; *McCarney v. Lightner,* 188 Iowa 1271. It may be that cases may arise where it may be inferred from all the circumstances, such as the character of the business, the relation of the parties thereto, other provisions of the contract, and so on, that the agreement was to share the losses. But here we have a written contract, and there is nothing therein to show that there was any well defined business in the manufacture of sorghum contemplated. It may be conceded, for the purposes of the argument, that, as contended by appellant, there may be cases where one transaction or one venture may be a partnership. In the instant case, the grinding of cane was a mere incident to the farming operations under the lease. Other cases are cited, holding that the fact that one receives a share in the profits of an enterprise as compensation for services with property or opportunity furnished by him in aid of the business, does not constitute a partnership; that he must share in the profits, as such. *Ault Co. v. Baker,* supra; *Garrett v. Republican Pub. Co.,* 61 Neb. 541; *Nantasket Beach Steam. Co. v. Shea,* 182 Mass. 147; *Foley Co. v. McKinley,* 114 Minn. 271 (131 N. W. 316). Other cases might be cited on this point, but we shall not take the space.

We do not understand appellant to controvert these several propositions, but he contends that, in the contract in question, "expenses and losses are synonymous." They concede the rule

that there must be a sharing in the losses, as well as the profits, but they say that the contract provided for the sharing of "losses," which is included in the term "expenses." Some of these refer to net profits and gross profits. 20 Ruling Case Law 826 (Section 31), 828 *et seq; Toocy v. Percival Co.*, 192 Iowa 267. Naturally, the expenses of a concern must be deducted before it can be determined whether there is any profit or loss. The language of the contract in question seems to contemplate that, because it refers to the expenses of hands and board, and then says that the parties are to share and share alike in the profits. The language of the contract is that first party furnishes the gasoline engine and second party furnishes a cane mill and each is to pay one half of the expense, including wages of the hands and board for same, and share and share alike in the profits of the enterprise. Clearly, this contemplates that each is to pay one half of the expense only of operating the mill, gasoline, hands, and board. Suppose these parties were, as contended by plaintiff, operating a custom cane mill, and that it was an out-and-out manufacturing enterprise, and Beason should have purchased a large quantity of cane, which, before being ground up, should become frozen, or otherwise made worthless; or that he should carelessly or otherwise destroy or permit to be destroyed a large quantity of manufactured sorghum. Could it be claimed that the defendant, as a partner, would be liable for such losses? It seems to us that clearly this could not be so. The cases cited by appellant do not, we think, bear out their contention. The first case cited is *Illinois Mal. Iron Co. v. Reed*, 102 Iowa 538. In that case, one party was to furnish the capital and the other the business management, in a new enterprise, the success of which was doubtful. It was contemplated that there was likely to be a loss. The contract provided for doing a well defined business in the manufacture and sale of corn planters. Appellant also cites *Heard v. Wilder*, 81 Iowa 421. In that case, plaintiff's contention was that he and defendant should purchase real estate, and that it was the agreement that they should share equally in the profits or losses. The court held that there was an agreement to share equally in the profits or losses. A controverted question in the case was

whether the agreement was made before or after the purchase of the land, and the court held the evidence sufficient to support a finding that it was made before. In *Kuhn v. Newman,* 49 Iowa 424, there was more than the question of expenses. True, the expenses were to be paid out of the profits, but the contract itself expressly provided that:

"The profits, if any, are to be divided between the said Kuhn and the said Newman, share and share alike, and all losses in the business, of every kind, is also to be borne by the parties equally."

Clearly, this case does not support appellant's contention.

22 Am. & Eng. Encyc. of Law (2d Ed.) 40 is to the effect that an agreement to share both the profits and the losses or expenses of a business is held to be, in some cases, conclusive evidence of a partnership. The same citation also says that an agreement to share profits and losses does not absolutely, as a matter of law, create a partnership; and that, if other circumstances in the transaction show that the parties did not intend to create a partnership, none is created. It is doubtless true, as some of the cases hold, that the sharing of profits, with other circumstances before indicated, may be considered as a circumstance bearing on the question as to whether losses were to be shared. But we must take the entire situation and all the circumstances, in determining what was the purpose or intention of the parties. 24 Cyc. 1466 is substantially to the same effect, that, where the parties jointly engaged in an enterprise of cultivating the land, one furnishing the land and farming utensils, and the other, labor and superintendence, sharing the expenses, etc., this constitutes a partnership. These and other cases cited by appellant do not, under all the circumstances of this case, run counter to the prior discussion of the subject, or show that there was a partnership. There is nothing in the record to show that defendant held himself out to others as a partner.

We are of opinion that the trial court properly ruled that plaintiff had not shown the existence of a partnership between Beason and the defendant.—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.