IN RE ESTATE OF HERMAN SCHULTZ.

FARMERS' STATE BANK OF SCHLESWIG, Appellee, v. HERMAN SCHULTZ ESTATE, Appellant.

EVIDENCE: Declarations—In re Partnership. Ex-parte declarations
1  are inadmissible to prove a partnership relation against a stranger to the declarations.

WITNESSES: Transactions With Deceased—Corporate Officers. An
2  officer of a plaintiff corporation, in the trial of a claim in probate, is competent to testify to a conversation which he (without taking part therein) overheard between another officer of the bank and the deceased.

PARTNERSHIP: The Relation—Contracts of Lease Not Partnership.
3  Farm contracts or agricultural agreements by which the owner of land contracts that the land shall be occupied by another, under an agreement that each party will furnish certain things and that the products shall be divided in a named manner, will not, in the absence of clear evidence to the contrary, constitute a partnership.

*Appeal from Crawford District Court.—E. G. ALBERT, Judge.*

June 22, 1923.

Hearing to the court on a claim in probate. The claim was founded on certain promissory notes. Judgment was rendered · establishing the claim. The executor appeals. The facts appear in the opinion.—*Reversed.*

*Conner & Powers,* for appellant. .

*Sims, Kuehnle & Page,* for appellee.

Faville, J.—The appellee filed its claim in writing against the estate of Herman Schultz, deceased. Said claim is predicated upon three promissory notes, said notes being for $500, $2,000, and $2,600 respectively. They are all payable to the claimant, and are all signed by one George Schultz, son of the decedent, Herman Schultz. No pleadings were filed in the cause, except the written claim of the appellee, with copies of said notes attached thereto.

Briefly stated, it is the contention of the appellee that the maker of said notes, George Schultz, was in partnership with the decedent, Herman Schultz, and that the action was brought · to establish said notes as a claim against the estate of the said Herman, because of such alleged partnership. It appears that the said notes have been reduced to judgment against the maker, George. It appears from the record that Herman owned a farm of about 280 acres, located near the town of Schleswig. He occupied this farm, with his family, until about the year 1916, when he moved to town. About this time, the son George married, and took charge of said farm, under an oral arrangement with his father. The question as to whether or not this oral arrangement between the father and son constituted a partnership is the primary question in this case. No one testified in regard to the terms of the oral arrangement between Herman and his son George, except the latter. We will review his testimony later.

The burden rested upon the appellee to establish that the promissory notes signed by George were, in fact, the obligation of the alleged partnership claimed to exist between him and his father. Did appellee carry such burden and legally establish

its claim that, although the decedent did not sign the written instruments, they were, in fact, his obligations, and that his estate is bound to pay the same?

The action was tried to the court, although, under Code Section 3341, it might have been submitted to a jury.

I. Appellee offered evidence of certain of its officers tending to show that the maker of the notes, George, had stated to such officers that he and his father were "partners" in the operation of the farm. These declarations by the son, not made in the presence of the alleged partner, even if fully established by the evidence, would not be sufficient to establish the fact of the partnership, as against the alleged partner or his estate. One party cannot be charged as a partner by the declarations of another, claiming that he is such partner, without notice or knowledge of such declarations. If one seeking to obtain credit could charge a stranger to the transaction as a partner by his declarations to that effect, made in the absence and without the knowledge of the one sought to be charged, there would be no safety for anyone. To so declare would be to open a door to fraud and to issue an invitation to dishonesty. We have refused to do so. *Evans v. Corriell,* 1. G. Gr. 25; *Brown v. Rains,* 53 Iowa 81; *Chambers v. Grout,* 63 Iowa 342; *Anfenson v. Banks,* 180 Iowa 1066, 1098. See, also, *Brown v. Crandall,* 11 Conn. 92.

1. EVIDENCE: declarations: *in re* partnership.

The objections of the appellant to the testimony of the witness for the appellee regarding the declarations of George Schultz, to the effect that George and his father, the decedent, were partners, should have been sustained, and the evidence excluded.

II. The claimant also offered evidence to prove that, when certain stock buyers interviewed the son about the purchase of stock on the premises, he advised them that his father was interested in the stock with him, and that he wished to consult with him about the selling of the same.

This evidence is closely allied to the evidence regarding the declarations of George to the bank officials to the effect that he and his father were partners. There was no proof that the decedent was present at or took any part in these conversations, or that he ever had any notice or knowledge thereof. The evi-

dence was not offered for the purpose of impeachment of the testimony of George, but as a part of appellee's main case.

For the reasons previously suggested, a party cannot be held to the liability of a partner by such statements and declarations of one who it is claimed was a copartner, where it appears that the one sought to be held by such declarations in no way ratified the same, and is not even shown to have ever had any knowledge thereof.

Upon the record as made, we think this evidence should have been excluded.

III. The appellee also offered the evidence of an officer of appellee bank, to the effect that he overheard a conversation between the decedent, Herman, and another officer of the ap-

2. WITNESSES: transactions with deceased: corporate officers.

pellee, in which conversation Herman stated that he and George were partners on the farm; that he and George were going to run the farm together; that George was to run the farm, and the proceeds were to be divided.

This testimony was objected to on the ground that the witness was incompetent to testify to the conversation, under Code Section 4604, familiarly known as "the dead man's statute." This statute has been before this court so frequently that a review of the decisions construing it is unnecessary. We have been exceedingly liberal in applying this statute. *Curd v. Wisser*, 120 Iowa 743; *In re Estate of La Grange*, 191 Iowa 129.

It is contended by the appellant that the bank, being a corporation, can act only through its officers and agents, and that, where one officer of the bank has a conversation with a party who is afterward deceased, another officer of the bank who took no part in said conversation, but overheard the same, is incompetent to testify to such transaction.

By the language of the statute it is provided that a person is incompetent to be examined "as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased," etc. The transaction or conversation referred to in this case did not take place between the witness and the decedent, but between another party and the decedent, and in this conversation the witness took no part. We have frequently held

that, under circumstances of this kind, the witness who overheard the conversation but took no part therein was not incompetent to testify to such conversation. *Sweezey v. Collins,* 40 Iowa 540; *Johnson v. Johnson,* 52 Iowa 586; *Gable v. Hainer,* 83 Iowa 457; *Leipird v. Stotler,* 97 Iowa 169; *Allbright v. Hannah,* 103 Iowa 98; *Mallow v. Walker,* 115 Iowa 238; *Wright v. Reed,* 118 Iowa 333; *Jacobs v. Jacobs,* 130 Iowa 10; *Foreman v. Archer,* 130 Iowa 49; *Barto v. Harrison,* 138 Iowa 413; *Schubert v. Barnholdt,* 177 Iowa 232; *Hayes v. Snader,* 182 Iowa 443; *Crist v. Tallman,* 190 Iowa 1248.

Appellant, however, contends that an exception to this rule should be recognized in the instant case, because of the fact that the conversation referred to took place between an officer of the appellee bank and the decedent, and that the witness who testified to said conversation is also an officer of the appellee bank, and as such is interested in the event of the action, and is rendered incompetent under the statute.

So far as we are advised from the arguments of counsel, this precise question has never before been before this court. Applying, however, the general rule which we have recognized in the cases above cited, we are of the opinion that the witness was not rendered incompetent to testify to the transaction, in which he took no part, between the bank officer and the decedent, merely because of the fact that he is an officer in said bank. The court did not err in refusing to hold that the witness was incompetent to testify to said conversation.

IV. The burden of this case rested upon the appellee, not only to establish the existence of a partnership between the maker of the notes and the decedent, but also to show that the

3. PARTNERSHIP: the relation: contracts of lease not partnership.

notes grew out of and were connected with the business of the partnership. The evidence in the case discloses a not altogether unusual situation, where a father who owns land which he has farmed, and which is provided with stock and machinery, turns the same over to a son, to farm and operate under an arrangement with the son that he is to perform all of the work of operating the farm, and that the profits derived from the farm are to be divided equally between the father and the son.

The son, George, testified in behalf of the appellant regard-

ing the arrangement between his father and himself, and said:

"The arrangement when father left the farm was that he turned over to me all stock as it was, and I was to have half I could make out of it. He was to furnish everything. We had no writing. When he left the farm, he left the hogs, horses, cattle, machinery, and everything, and he said that I could have the use of everything, and told me to go ahead and farm the place, and half of what I could make out of it should be mine. I accepted his proposition. There was no talk about raising money, or was father to help me to borrow money to run the farm. I went ahead under the arrangement as he proposed. In reference to the three notes mentioned, one for $2,000, one for $2,600, and one for $500: the $2,000 note, I desire to say that I renewed part of it. There was no talk between my father and myself about a partnership or about running a partnership in my name. We never agreed to a partnership, and it never was a partnership. We never talked of calling it a partnership between us. I was to take care of the live stock and help. I had a man to help with that. I had to stand the expense of help on the farm. Father was to bear none of that. Under the arrangement, I had to give father one half of what I sold. I carried out the arrangement. When the stuff was shipped away and sold, and the returns came back, I deposited one half of the money in the bank to father's credit. Where I gave checks to him, it would be for one half of the returns that came back from Omaha or Chicago. Father never helped to pay any of the notes that I gave the bank. When a note was renewed at the bank, I renewed it. Father had nothing to do with it. Father never attended to these transactions, and never signed the notes. * * * Father did have an interest in the stock. I never talked with my father about borrowing money to run the farm. He left hogs, cattle, horses, and machinery. * * * When the stuff was sold and returns came, I gave half to father. * * * When the money was borrowed on the notes which are here, I paid some of it to pay my brother-in-law, Carl Erne. I borrowed $2,300 for him. I did not borrow it for the venture I had in the farm. My father had nothing whatever to do with that. No portion of that money ever went into the farm. I got one half of the stuff for my work, and my father got the other half. Father

was not to pay any of the expense. I was to stand the whole of it.''

On cross-examination, he testified as follows:

''I worked for my father there like a partnership, but we were not in partnership. My father got half of the proceeds of the sale, and I got half of the proceeds of the sale. My father furnished all the stuff that was on the place: cattle, horses, and hogs. He owned all these, as well as the farm machinery. He owned all the personal property on the place. I put up against these things my time. My father owned the land. I paid the expense in running it, and I was to get half of the sales from the farm. I mean I was to get half of the proceeds. If I sold a car of hogs, half of it was his and half of it was mine. If I sold anything else, half was his and half was mine, and he furnished the personal property, and I was to furnish the time and help.''

On redirect examination, he testified:

''In regard to dividing the money which came as returns from property sold, if there had been some expenses incurred in buying feed, this expense would be taken out before the division. The expense had to be paid, as the understanding was that father was to have half of the profits. I had to pay the hired help and pay the expenses besides.''

On re-cross-examination, he testified:

''We were each to get half of the proceeds of the sales, and I was to pay the expenses.''

There is no dispute of this testimony by George Schultz as to what the arrangement in fact was, between himself and his father, except as the same may be inferred from other testimony offered by the appellee. It appears that there were notes in the appellee bank signed by Herman Schultz, and also notes signed by George personally, and that the bank at no time ever had any notes that were signed by both of them. It also appears that each of said parties kept his individual account in the bank, and drew checks thereon. It also appears in the record that, when stock from the farm was shipped away and sold, the proceeds were returned payable to George, who deposited the same in the bank, and then gave to Herman his check for

half thereof, which Herman deposited to his own account. There never was a joint account kept by the parties.

We have not attempted to set out all of the evidence in the case. The action is not triable in this court *de novo*, and, in view of a possible retrial of the case, we refrain at this time from commenting upon the weight to be given the evidence, or its sufficiency to sustain appellee's contention.

We quite recently had before us a somewhat similar situation in the case of *Florence v. Fox*, 193 Iowa 1174. In that case, we held that farm contracts or agricultural agreements by which the owner of land contracts with another that such land shall be occupied and cultivated by the latter, each party furnishing a portion of the seed, implements, and stock, and that the products of the farm shall be sold and the proceeds divided equally, do not constitute a partnership between the parties, in the ordinary meaning of that term, and with the usual liabilities. We said:

"In the absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to such an agreement intended to assume the important and intricate responsibility of partners, or to incur the inconveniences and dangers frequently incident to that relation."

The case is pertinent to the situation in the instant case.

V. It has also been held that it is not within the power of a nontrading partnership to borrow money or make negotiable paper and charge with individual liability partners not assenting thereto. *Schumacher v. Sumner Tel. Co.*, 161 Iowa 326, and cases cited therein. In said case, we held that, in the case of a nontrading partnership, the burden is upon the plaintiff, in an action on such a note, to prove either express authority or circumstances from which such authority can fairly be implied in the partner executing the note. In the instant case, the note is not executed in the name of the alleged partnership, but solely in that of the son, who denies, not only that a partnership existed, but that the money was borrowed for anyone except himself, or used for any purposes except his own. The evidence in the record from which authority could be implied that the note was executed in behalf of the decedent is at least very meager.

There was no motion for judgment for appellant in the lower court, and in view of the possibility of a retrial, we do not 'pass upon the question of the sufficiency of the evidence to sustain the decision.

For the errors pointed out, the cause must be reversed and remanded for a new trial. It is so ordered.—*Reversed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.