FARMERS GRAIN COMPANY, INC.,
Plaintiff-Appellant,

v.

Paul G. IRVING and Colleen L. Irving,
Defendants-Appellees,

Larry D. Foster and Betty
Foster, Defendants.

No. 85–1150.

Court of Appeals of Iowa.

Nov. 26, 1986.

James F. Fowler of Wilson & Fowler, Indianola, for plaintiff-appellant.

Kenneth L. Butters, Des Moines, for defendants-appellees.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff, which sells feed and other agricultural products, sued the owners and operators of a farm for the balance due on an open account. After the operators of the farm took bankruptcy, the plaintiff pursued this action against the landowners. The plaintiff contended the landowners were liable along with the operators because they were partners in the farming operation rather than mere landlords; in the alternative, the plaintiff contended the landowners were involved in a joint venture with the farm operators, or that the landowners and the farm operators were in the relationship of principal and agent.

The district court rejected all of the plaintiff's theories and held that the landowners were not liable on the open account. The plaintiff has appealed. The plaintiff contends the evidence was sufficient to establish either a partnership, a joint venture, or an agent-principal relationship.

In the spring of 1982 Larry Foster set up a dairy farming operation on land owned by Paul Irving. The parties' written agreement, which was captioned as a lease, provided that Irving would furnish the land, Foster would be responsible for day-to-day operation, each would furnish fifty percent of the cattle, each would pay fifty percent of the feed expenses and certain other op-erating expenses, and each would receive fifty percent of the gross income.

During 1982 and early 1983, Foster purchased feed and other farming supplies on open account from the Farmers Grain Company. Farmers Grain asserts it was unaware during most of this time that Irving owned the land in question or had any role in the farming operation.

The farming operation was short-lived due to financial difficulties. In the spring of 1983, Foster stopped operating the farm, and in late 1983 or early 1984 he took personal bankruptcy.

Prior to Foster's bankruptcy, Farmers Grain filed the present suit against both Foster and Irving for the unpaid balance of over $27,000 owed on the open account. After Foster's liability was discharged in bankruptcy, Farmers Grain continued the suit against Irving. Farmers Grain contended that Irving was liable for the open account balance because he was a partner in the farming operation rather than a mere landlord. In the alternative, Farmers Grain contended that Irving and Foster were involved in a joint venture or that Irving and Foster were in the relationship of principal and agent.

After a hearing, the district court rejected all of Farmers Grain's theories for imposing liability on Irving for the open account balance. The district court therefore entered judgment against Farmers Grain. Farmers Grain has appealed, reiterating each of its arguments that Irving was more than a mere landlord and was jointly liable with Foster for the open account balance. Farmers Grain contends the evidence was sufficient to establish either a partnership, a joint venture, or an agent-principal relationship. We affirm.

Our scope of review is for correction of errors at law. Iowa R.App.P. 4. The trial court's findings of fact have the force of a special verdict and are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We view the evidence in a light most favorable to the judgment and need only consider evidence favorable to the judgment, whether or not it is contra-

dicted. *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 232 (Iowa 1985). We are not, however, bound by the trial court's determinations of law and are free to decide whether the trial court's findings were induced by legal error. *Rouse v. State*, 369 N.W.2d 811, 813 (Iowa 1985).

The plaintiff first contends that the trial court erred in finding that no partnership existed as between Foster and Irving. Plaintiff argues that the trial court's reliance on the decision handed down by the Iowa Supreme Court in *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777 (Iowa 1985), is misplaced because there is much stronger evidence of a partnership in the present case. We disagree.

In determining whether a partnership exists in the present case, we must address two issues. First, we must examine the written agreement between Foster and Irving to establish whether the elements essential to the creation of a partnership are present. Second, we must examine the actual conduct of Foster and Irving to determine whether such conduct evidenced a partnership. The construction of a written contract is a question of law for the court. *Gere v. Council Bluffs Community School Dist.*, 334 N.W.2d 307, 309 (Iowa 1983). When there is a dispute of whether certain events occurred or whether different inferences may be drawn from the facts the parties agree occurred, then we determine whether the facts, as found by the trial court, constitute substantial evidence that the parties did not conduct themselves as partners. *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777, 783 (Iowa 1985).

Iowa courts have traditionally held that "it will not be presumed that the parties to [stock-share farm leases] intended a partnership, in the absence of stipulations or evidence clearly manifesting such a purpose." *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 783; *Federated Mut. Implement and Hdwe. Ins. Co. v. Eng*, 178 N.W.2d 321, 324 (Iowa 1970) (court holding that stock-sale lease arrangement has consistently been construed as constituting a landlord-tenant relationship rather than a partnership or joint venture); *Florence v. Fox*, 193 Iowa 1174, 1178, 188 N.W. 966, 967–68 (1922) (court holding that in the absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to a stock-sale lease intended to assume the important and intricate responsibilities of being partners). It is thus quite evident that our courts have held that such stock-sale lease agreements, like the one involved in the present case, generally do not constitute partnerships in order to prevent the exposure of the parties to unwarranted and unexpected liability for conduct that he or she is ordinarily powerless to control.

Having noted the historical treatment of stock-sale leases, we next turn to an examination of the contract between Foster and Irving.

As we noted earlier, the construction of a written contract is a question of law for the court. *Gere*, 334 N.W.2d at 309. The cardinal principle in the construction of written contracts is that the intent of the parties must control and that except in cases of ambiguity the intent is determined by the language of the contract. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 785; *Broyles v. Iowa Dep't of Social Services*, 305 N.W.2d 718, 721 (Iowa 1981). The contract in the present case, written on a standardized form provided by the Iowa State University Extension Service, is, on its face, a common stock-share lease. The elements of a landlord-tenant are all present. *See* 1 Restatement (Second) of Property § 1.1 (Requirement of a Space Having a Fixed Location); § 1.2 (Requirement That Right to Possession be Transferred); § 1.3 (Capacity and Authority to Enter into the Landlord-Tenant Relationship); § 1.4 (Lease for a Fixed or Computable Period of Time). We must, however, examine the contract to determine whether the following elements required to create a partnership are present: (1) an intent by the parties to associate as partners; (2) a business; (3) earning of profits; and (4) co-ownership of profits, property, and con-

trol. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 785.

Under Iowa law, an intention to associate is the crucial test of a partnership. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 785. In the present case, the contract recites an express intention to create a landlord-tenant relationship. Nowhere in the body of the contract do the ·words "partner," "partnership," "firm," or any other term appear. The contract is specifically headed "Iowa Stock-Share Farm Lease—(Non-Partnership)." Irving is consistently referred to as the "landlord" and Foster as the "tenant," and they are identified in no other way. The landlord-tenant language as employed by the parties is therefore useful in discerning their intent. *Anderson v. Walker*, 256 Iowa 1324, 1328, 131 N.W.2d 524, 526 (1964).

It is also clear from the contract that the parties contemplated a business purpose when entering into the contract, and that the purpose of such business was the earning of profits. Less clear, however, are the parties' intentions concerning the co-ownership of profits, property, and control.

The contract signed by Foster and Irving contains no provision for the sharing of profits. The contract provides that "[t]he tenant shall set aside and pay to the landlord as rent for the leased premises and as payment for the use of the landlord's share of the co-owned property an amount equal to 50 percent of the gross income from the leased premises...." The contract also contained a requirement that Foster and Irving each assume individually certain expenses. No provision for the sharing of losses is provided for in the contract.

The plaintiff contends that because Irving undoubtedly received some portion of the gross income from the milk receipts, there was prima facie evidence of a partnership. *See* Iowa Code § 544.7(4). Iowa Code section 544.7(3), however, specifically states that "[t]he sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right of interest in any property from which the returns are derived." Furthermore, the statute cited by the plaintiff, section 544.7(4), provides that the receipt of a share of profits shall not create an inference of a partnership where such profits were received in payment for rent to a landlord. Thus, the fact that Irving received some portion of the gross receipts does not in and of itself establish the existence of a partnership. We also note that the plaintiff concedes that the parties never discussed the sharing of losses, and therefore unless a partnership is established by other evidence, no agreement to share losses may be inferred. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 786; *Anderson*, 256 Iowa at 1329, 131 N.W.2d at 527.

The contract between Foster and Irving does provide that all livestock except for a 4–H Club calf were to be jointly owned as tenants in common. While the language contained in the contract evidenced some intent to create a community of interest in the dairy cattle, this does not, of itself, establish a partnership. *Anderson*, 256 Iowa at 1327–28, 131 N.W.2d at 526; *Myers v. Blink*, 232 Iowa 1238, 1241, 7 N.W.2d 819, 821 (1943); Crane and Bromberg, *Law of Partnership*, § 12(b) (1968).

Finally, concerning the element of co-ownership of control, the key element in determining the existence of a partnership is whether there was contemplated between the parties a community of interest in the administration of the business. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 786; *Anderson*, 256 Iowa at 1327, 131 N.W.2d at 527–28. Pursuant to section VII of the contract, titled "Farm Operation," Foster was placed in virtually total control of the day-to-day operations of the farm. Pursuant to the contract, Foster was to exclusively handle the hiring of farm help, maintain the upkeep of the buildings and fences, and provide such machinery and equipment as was reasonable. Under section VI of the contract, however, all matters involving the sale or encumbrance of jointly-owned property could not be authorized without the consent of either party. Such a limitation upon the right of

each party to act as agent of the other with the operation of the business also denies partnership intent. *Anderson,* 256 Iowa at 1328, 131 N.W.2d at 527.

Upon an examination of the contract, we agree with the trial court that the contract as signed by Foster and Irving did not envision a partnership as between the parties.

We are aware, however, that a written agreement is not conclusive as to the existence of a partnership. The conduct of the parties and the circumstances surrounding the transactions are also important to our analysis. *Anderson,* 256 Iowa at 1328–29, 131 N.W.2d at 526–27; *Malvern National Bank v. Halliday,* 195 Iowa 734, 739, 192 N.W. 843, 846 (1923).

The record reveals that both parties did not follow the terms of the written contract, but rather used it only as a guide to be followed as either party chose. The record reveals that at no time did Irving represent himself as a partner of Foster in the dairy operation. In fact, an employee of the plaintiff grain company, Ralph Westlund, testified that Foster intimated that he and his wife owned the dairy operation. Westlund did testify that once when he was visiting Foster concerning his overdue accounts, Foster mentioned that the man walking around the property, Irving, was his partner, but at no other time did Foster intimate to the plaintiff that he was a partner with anyone. Westlund testified that he only looked to Foster for payment of the feed account and that it was not until just before the receivership was established that Irving came to plaintiff's business and told Westlund that he, not Foster, was the owner of the dairy farm.

The record also reveals that no joint bank account was ever established as between Foster and Irving. Though Foster testified that both he and Irving had discussed opening up a joint account from which all expenses and receipts were to be paid and deposited, the evidence reveals that the only authorized signatures on the account were Foster and his wife under the name "Foster Jersey Operating Account."

All feed purchases made by Foster were paid pursuant to checks drawn on this account, and all feed purchases were made in Foster's own name. The only deposit made by Irving in this account was a single deposit of $4,000 to ensure there were funds to begin the dairy operation.

Concerning the day-to-day operations of the farm, Irving testified that while he did frequently give advice on how to manage the farm, Foster usually ignored such advice. Foster testified that he basically ran the entire farming operation as he saw fit. Though Irving did keep the ledger of the dairy operation and balanced the ledger with the receipts provided him by Foster, it was Foster who had virtual control over how much feed to buy and from whom to buy it. The record reveals that though Irving kept the books, this proved to be difficult because Foster was often several months late in sending the receipts and copies of bills to Irving. Foster also had full control over where and with whom he was going to sell the milk. Though all dairy receipts were to be deposited into the "Foster Jersey Farm Operating Account" and all common expenses were to be paid out of such account, Foster did not deposit all dairy checks into the account but rather assigned his half-interest in the checks to various creditors.

Though the contract signed by the parties contemplated co-ownership of the dairy cattle, in reality the parties' cattle were kept as separate assets through eartags and tattoos. The farm real estate was solely owned by Irving; whereas the farm machinery and dairy equipment were solely owned by Foster.

Based on the above facts, the trial court concluded that the conduct of Foster and Irving did not evidence an intent to create a partnership. We agree. The facts of the present case are nearly identical to those involved in *Chariton Feed and Grain, Inc. v. Harder,* 369 N.W.2d 777 (Iowa 1985). Though Irving was certainly more well-aware of the daily operations of the business than was the landlord in

*Chariton Feed and Grain, Inc.*, there is nothing in the evidence to indicate that Irving exercised joint control of the farming and dairy operations. We therefore hold that the trial court was correct in holding that the existence of a partnership between Foster and Irving was not supported by substantial evidence and that Irving was not liable for the balance due to plaintiff.

The trial court additionally rejected plaintiff's argument that a principal-agent relationship existed as between Foster and Irving. We agree.

■■■ The burden of proving an agency relationship is upon the party asserting its existence. *Chariton Feed and Grain Co., Inc.*, 369 N.W.2d at 789. Though the question of whether an agency relationship exists is ordinarily one of fact, there must be substantial evidence on the question to generate a jury question; a scintilla is not enough. *Id., C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 553 (Iowa 1983). An agency relationship is a fiduciary relationship resulting from the manifestation of consent by one person, the "principal," that another, the "agent," shall act on the former's behalf and subject to the former's control and from consent by the latter to so act. *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 38 (Iowa 1977).

■■ We believe that much of our discussion concerning plaintiff's partnership agreement is applicable here. The contract signed by Foster and Irving clearly does not contemplate an agency relationship. The contract gives Foster control over the day-to-day farming operations, except for the sale of jointly-owned property. The contract specifically states that any property purchased by either party is to be purchased in either party's own name and on his or her own account, nor could either party enter into a contract on behalf of the other. Regarding the conduct of the parties, Foster testified that it was he who managed the farming operations, and Irving testified that Foster basically refused to act on any of his advice. While it is true that Foster did in fact buy feed on behalf

of himself and Irving, Foster paid for such feed on his farm operations account and not on behalf of Irving. Though Irving was to pay one-half of the expenses, the Iowa Supreme Court has held that such written agreement is not a sufficient basis for a supplier's cause of action against a landlord. *Chariton Feed and Grain, Inc.*, 369 N.W.2d at 790; *see also Johnson v. Francis*, 179 Neb. 342, 344, 138 N.W.2d 27, 29 (1965) ("The agreement of a landlord contained in a written lease to pay one-half of the purchase price of the fertilizer gives a third party no cause of action against the landlord for half of the fertilizer sold to the tenant.") Finally, the evidence reveals that Irving at no time held Foster out as having authority to act on his behalf—Foster, in fact, apparently attempted to intimate that he and his wife were the owners of the farm. We therefore hold that the trial court was correct in finding that no agency relationship existed.

The plaintiff finally contends that the trial court erred in failing to make findings of fact and conclusions of law regarding the issue of joint venture pursuant to plaintiff's 179(b) motion for enlargement of findings. Iowa courts have generally held that in the absence of a motion for enlargement we will not assume the trial court ignored the theory but rather will assume the trial court rejected it. *See Fort Dodge Country Club v. Iowa-Illinois Gas & Elec.*, 231 N.W.2d 595, 597 (Iowa 1975). We presume the trial court decided the facts necessary to support its decision in defendant's favor. *State v. Boelman*, 330 N.W.2d 794, 795 (Iowa 1983). We note, however, that in the present case the plaintiff filed a rule 179(b) motion.

■■ The plaintiff does not allege any specific or substantial prejudice as a result of the trial court's omission. We therefore do not believe that the plaintiff suffered any prejudice as a result of the trial court's omission. Because the theory of joint venture is necessarily intertwined with the applicability of the laws of agency or partnership, the trial court's detailed findings of fact and conclusions of law that no partner-

ship or agency existed decided facts necessary to support a rejection of the joint venture theory.

AFFIRMED.