**Muriel Jeanne HOMOLLA, Appellant,**

v.

**Shirley C. GLUCK, Appellee.**

**No. 15816.**

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1957.

Glenn E. McCann, Kansas City, Mo. (Lewis W. Sanders and Knipmeyer, McCann & Sanders, Kansas City, Mo., on the brief), for appellant.

James H. Ottman, Kansas City, Mo. (William W. Shinn and Sebree, Shook, Hardy & Ottman, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

Muriel Jeanne Homolla on September 7, 1954, brought this action against Shirley C. Gluck in the Circuit Court of Jackson County, Missouri, to recover damages for personal injuries received in an automobile accident which occurred near Lees Summit, Missouri, on February 14, 1952.

The plaintiff's claim was that her injuries were due to actionable negligence on the part of the defendant in the operation of her car, in which the plaintiff was a passenger. The defendant, through her liability insurer, after removing the case to the United States District Court for the Western District of Missouri on the ground of diversity of citizenship, denied that she was negligent, and asserted that the plaintiff on January 28, 1953, for $275.00, settled her claims against the defendant and released her from all liability. In reply the plaintiff asserted that the release

should be set aside on the ground that it had been fraudulently procured by agents of the defendant by deceiving the plaintiff's father and leading him to believe that she had "absolved defendant of all liability and had signed a release when in fact she had not," thereby inducing him to advise her to execute the release in suit, which she did in ignorance of the falsity of the misrepresentations of the defendant's agents; and that $275.00 was a grossly inadequate consideration and was intended to cover property damage only.

The case was tried to a jury. At the close of the evidence the defendant moved for a directed verdict upon the ground, among others, that, under the evidence and the applicable Missouri law, the release executed by the plaintiff on January 28, 1953, was a valid release and barred her claim. The District Court, in accordance with the practice suggested by us in Barnett v. Terminal R. Ass'n of St. Louis, 8 Cir., 200 F.2d 893, 896,[1] reserved its ruling on the motion and submitted the case to the jury.

The jury returned a verdict for the plaintiff for $7,500. The defendant moved for judgment in accordance with its motion for a directed verdict, asserting that the plaintiff had failed to establish any basis for invalidating the release in suit. The court set aside the verdict and granted the defendant judgment upon the ground that the plaintiff's evidence failed to make her claim of fraud in the procurement of the release in suit an issue of fact for the jury, and that therefore the defendant at the close of the evidence had been entitled to a directed verdict as a matter of Missouri law. This appeal followed. The only

error assigned relates to the court's ruling in regard to the release, and the printed record on appeal relates to that question only.

At the time of the accident in suit both parties were in the Army Nurse Corps. The plaintiff was a First Lieutenant and the defendant a Captain. They were on their way in the defendant's car from the Army Hospital at Fort Leavenworth, Kansas, to the Army Hospital at Fort Leonard Wood in Missouri. The defendant was driving. Near Lees Summit, Missouri, on Highway No. 50, the defendant lost control of her car; the plaintiff was thrown out and suffered fractures of her pelvis. She was taken to the Army Hospital at Fort Leavenworth and was there about two months, and was not restored to duty until early in June of 1952.

About five days after the accident, two adjusters for the defendant's liability insurer called on the plaintiff and obtained a statement from her describing the accident. At the trial she testified that "They wrote down what I told them, and as far as I can remember I read it and then I signed it." The statement signed by her was not a release. It contained the following:

"We had been traveling at a very reasonable moderate speed due to the wet pavements. We were on the two lane one way pavement traveling South in the outside or West lane still traveling at a moderate and safe speed when as we were about 2 miles North of Lees Summit and the junction of U.S. No. 71 By Pass, Shirley lost control of her car and we skidded.

\* \* \* \* \* \*

1. "\* \* \* We think that, even though the trial court is of the opinion that the evidence will not support a verdict for the plaintiff, the court should ordinarily reserve its ruling on a motion for a peremptory instruction until after verdict. That course will usually hasten the ultimate termination of the litigation and best serve the interests of both parties. The jury's view of the sufficiency of the evidence may coincide with that of the

court. If it does not, the court, despite the verdict, can enter judgment for the defendant. An appeal from such a judgment, entered after verdict, will usually terminate the controversy one way or the other, and avoid a retrial with its resulting delay, trouble and expense and the possibility of a second appeal. Compare, Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573–574, 71 S.Ct. 428, 95 L.Ed. 547."

"Shirley at all times was driving in a safe and prudent manner—and I feel this accident was no one's fault and could have happened to any one. At no time did I caution her on her driving habits or the speed of her car."

The record shows that two weeks after the accident the plaintiff wrote the defendant a letter commencing, "Dear Shirley," and ending with, "Love, Jeanne." The letter, so far as pertinent, read as follows:

"Shirley, I'm so terribly sorry, that you felt so badly about the accident, but you know you really shouldn't, it could happen to anyone. It wasn't your fault, of course I would probably feel the same as you do if I were in your place. * *
* * * * * *
"Didn't say any thing to insurance men, except to give them a description of the accident. * *"

The plaintiff testified that when she was visited by her parents, on or about February 28, 1952, she asked her father "to take care of the whole [insurance] matter for me"; that later he telephoned her from Chicago to the effect that by signing papers in the hospital she had signed away all her rights; that, after her conversations with him it was her understanding that when she signed papers in the hospital she had signed a release; that she received the form of release in suit from her father with a letter of explanation; that he asked her to sign the release; that she did so and later received a draft from the insurance company, which she cashed.

Her father's testimony was, in substance, as follows: That he and his wife visited the plaintiff in the hospital about February 28, 1952; that she told them that two men from an insurance company had seen her and she was worried about some paper she signed; that later she asked him to assist in connection with the insurance matter, and he agreed to do so; that he had her secure the name of the defendant's liability insurance company; that he asked a friend, who was a lawyer but was not in active practice, to write a claim letter to the company at Kansas City, Missouri; that the letter was written November 6, 1952; that on November 10, 1952, a Mr. Hereley, a representative of the insurance company, called him (the plaintiff's father) from Chicago and said that the plaintiff had signed papers at the hospital releasing the company of all liability, and had no claim against the company; that a few days later, in another telephone conversation, Hereley agreed to pay $275.00 "if my daughter would agree to sign papers, release papers I believe he called them"; that he never talked to Hereley in person; that he never saw the papers he was told the plaintiff had signed; that after his second telephone conversation with Hereley he received the release for her to sign; that he mailed it to her; that in a telephone conversation she asked him if she should sign it, and he advised her to do so, saying, "Evidently you have no claim against the company, you might as well sign and get it over with," or words to the same effect; that the plaintiff, late in January 1953, returned the release to him; that he mailed it to Hereley, and received the check, which was forwarded to the plaintiff, who cashed it.

■ This case in principle differs in no controlling respect from others in which this Court has consistently refused to attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State. See and compare, Buder v. Becker, 8 Cir., 185 F.2d 311, 315; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243; Guyer v. Elger, 8 Cir., 216 F.2d 537, 540–541, certiorari denied 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728; Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R. 1376; Bostian v. Universal C. I. T. Credit Corporation, 8

Cir., 238 F.2d 809, 812; Milwaukee Insurance Co. v. Kogen, 8 Cir., 240 F.2d 613, 615.

In Dierks Lumber & Coal Co. v. Barnett, supra, page 697 of 221 F.2d, this Court said, after stating that upon review of a case such as this the question is not whether the trial court has reached a correct conclusion but whether it has reached a permissible one:

> " * * * A decision by a federal court in a case governed by state law is necessarily largely a forecast of what in a similar case the Supreme Court of the state would hold the law to be. Cf. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 499–500, 61 S.Ct. 643, 85 L.Ed. 971, and Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 484, 60 S.Ct. 628, 84 L.Ed. 876." [2]

Once more we repeat what was said in National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, certiorari denied 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695:

> "This Court has repeatedly ruled that it will accept the considered view of a District Judge as to doubtful questions of local law. Many of the cases in this Court and the Supreme Court which support that rule will be found in the case of Buder v. Becker, 8 Cir., 185 F.2d 311, 315–316. In Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43, we said: 'The burden of demonstrating error is upon the Casualty Company. In a case controlled by local law, that burden is a peculiarly heavy one. This Court is not an appellate court of the State of Missouri and establishes no rules of law for that State. We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.' "

The Supreme Court of Missouri decides each of these release cases upon its own facts. That court apparently has taken a realistic and unemotional view of a situation where a mature plaintiff, of sound mind, dealing at arm's length with a defendant or his insurer, executes a release and thereafter seeks to repudiate it on the ground of having been misled. The District Court said in its memorandum and order on the defendant's motion for judgment:

> "Plaintiff in this case finds herself in a position where the case law of Missouri, upon which this case was tried by both parties, will not permit her to avoid the legal consequences of her intentional and voluntary act in executing the release in question. Cf. Wood v. Robertson, Mo., 245 S.W.2d 80; Poe v.

2. The Supreme Court has referred to a decision in such a case as: "a forecast— a prediction as to the ultimate decision of the Supreme Court of" a State, "a tentative answer which may be displaced tomorrow by a state adjudication," City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 172, 62 S.Ct. 986, 988, 86 L.Ed. 1355; the federal court's "own determination of what the Supreme Court of" a State "would probably rule in a similar case", King v. Order of United Commercial Travelers of America, 333 U.S. 153, 161, 68 S.Ct. 488, 492, 92 L.Ed. 608; "an assumption and at best 'a forecast rather than a determination,' " Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 104–105, 65 S.Ct. 152, 154, 89 L.Ed. 101; a conclusion as to "what the state courts may hereafter determine the state law to be," Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9.

Ill[inois] Cent. R. Co., [399] Mo. [1025], 99 S.W.2d 82; Powers v. K[ansas] C[ity] P[ublic] S[ervice] Co., [344] Mo. [432], 66 S.W.2d 840; and Conklin v. M[issouri] Pac. [R. Co.], [331 Mo. 734], 55 S.W.2d 306."

We quote the following excerpt from the opinion of the Supreme Court of Missouri in Poe v. Illinois Central Railroad Co., 339 Mo. 1025, 1038, 99 S.W.2d 82, 89:

"While the law affords every one reasonable protection against fraud, it does not go to the romantic length of establishing the relation of parent and child or guardian and ward between courts and adults capable of managing their affairs, in full possession of their faculties and unrestrained in action, and indemnify them when dealing at arm's length against the consequences of their own indolence, listless inattention, or unwarranted credulity in the transaction of business affairs. * * *"

We note that in Wood v. Robertson, Mo.Sup.1952, 245 S.W.2d 80, 84, 85, it was said:

" * * * It has been written that, in treating with release cases, this court has gone a long way to protect the foolishly credulous, as consonant with the administration of pure justice; but the courts will not protect those who, with full opportunity to do so, will not protect themselves. And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution. Conklin v. Missouri Pac. R. Co., 331 Mo. 734, 55 S.W.2d 306; * * *.

* * * * * *

"Here we have no evidence of a confidential relationship, and there is no evidence of artifice whereby plaintiff (or her husband who seems to have been acting with her in the settlement of their claims) was induced to forego an independent investigation of the facts. * * *"

The evidence in this case clearly indicated that the plaintiff knew that what she had given to the insurance adjusters on February 19, 1952, was a description of the accident, and not a release. The evidence also showed that she and her father made no effort to obtain a copy of her statement of that date, or even to see it. According to their evidence, they accepted without inquiry, and chose to rely upon, a statement made over the telephone by a representative of the insurance company, whom they had never met and knew nothing about, that the plaintiff had already released the company from liability.

Nothing urged upon us by the plaintiff demonstrates that the experienced Missouri federal judge who tried this case either misconceived or misapplied the law of that State in arriving at his carefully considered opinion that, under the evidence and the applicable law, the defendant was entitled to judgment.

The judgment appealed from is affirmed.