**L. E. STOCKDALE, Appellant,**

v.

**Roy OLSON, Appellee.**

**No. 15824.**

United States Court of Appeals
Eighth Circuit.

Nov. 18, 1958.

Leo F. Fitzgibbons, Estherville, Iowa (Fitzgibbons & Fitzgibbons, Estherville, Iowa, on the brief), for appellant.

Alan Loth, Fort Dodge, Iowa, for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

L. E. Stockdale brought this suit to foreclose a chattel mortgage on personal property, including corn, alleged to be covered by the mortgage and owned by Clifford Ingvall, Pearl Ingvall, John Ingvall and Bonnie Ingvall. Joined as a co-defendant was Roy Olson who claimed to own the corn allegedly covered by the mortgage and the United States of America because its instrumentality, Commodity Credit Corporation, carried a mortgage given by Olson on the corn in question. Jurisdiction of the federal court was based upon the fact that the United States was a party in District Court and while the United States did not join in this appeal, jurisdiction is retained on the basis that it was a necessary party in the original action. The defendants Ingvall did not appeal. The remaining parties will be referred to herein by name or as they were in the court below; namely, Stockdale as plaintiff and Olson as defendant. The law of the State of Iowa is controlling.

The dispute is over two cribs of corn grown on Olson's farm in 1954. For some years the Ingvalls had been tenants on Olson's farm. Ordinarily each—that is, landlord and tenants—had a 50% interest in the crops raised on the Olson farm and each paid for one-half of the seed and expenses. The parties had never signed a written lease but they more or less recognized an unsigned lease dated September 23, 1948. Between that time and March 1, 1954, however, the parties made oral agreements and arrangements which deviated from the unsigned lease. The Ingvalls were indebted to the plaintiff Stockdale, who for some years had been financing them in their farming operations. The time came,

however, when the Ingvalls had financial difficulty in raising their one-half of the expenses of farm operations. In the fall of 1953 they wanted to fertilize a certain tract of land on the Olson farm which they proposed planting into corn in 1954. The estimated total cost was $2,500. They were unable to raise their one-half thereof. The Ingvalls and defendant Olson then agreed that if he, Olson, would pay the full amount of the purchase price of the fertilizer, a sufficient amount of the Ingvalls' normal share of the crop would be set over to Olson to reimburse him for the one-half cost of the fertilizer advanced in behalf of the Ingvalls. The transaction was evidenced by a note in the amount of $1,282.50, which bears a notation that it was due at harvest time and also "50% fert. on n. corn".

Early in 1954 the financial relations between the Ingvalls and Stockdale had become more seriously impaired. Sometime prior to March 22, 1954, Stockdale refused any further financing for the Ingvalls and so informed them. The Ingvalls faced a crisis as to the 1954 farming operation. They informed Olson of Stockdale's action and stated that as a result thereof they would have to give up the farm. They had no money with which to pay for their one-half share of the seed and they were already behind on fuel and repair bills and creditors thereof were threatening. As a result, on March 22, 1954, the Ingvalls and Olson orally agreed that the Ingvalls would go ahead with their farming operations on the Olson farm and that if they could not secure the necessary funds elsewhere, Olson would advance the money for them and at harvest time a sufficient portion of the Ingvalls' normal share of the crops would be set over to Olson to reimburse him. The Ingvalls were unable to raise funds elsewhere, so, based upon this arrangement, they secured seed and the pressing creditors did not proceed. On May 25, 1954, when all the bills were in, Olson completed his part of the agreement by making payment. In connection therewith the parties executed a

document to encompass the March 22nd agreement and a note to cover the advances. The court specifically found that, "By reason of the arrangements made between Roy Olson and the defendants Ingvall, the latter were able to continue as lessees of the farm and produce crops on it in 1954. Without such arrangements they would not have been able to do so." The court also specifically found, "It is clear that *the arrangements between the Ingvalls and the defendant Roy Olson constituted part of the leasing arrangements under which the Ingvalls farmed the farm in 1954.* The plaintiff was an extraneous party to the leasing arrangements for the farm. There were no legal inhibitions which in (pro)hibited the Ingvalls and Roy Olson from making leasing arrangements for 1954 which differed from those of prior years. *Under the 1954 leasing arrangements the Ingvalls instead of receiving the same share of the crops they had received in prior years were to receive a reduced share.*" (Emphasis supplied.)

On March 26, 1954, the Ingvalls executed a chattel mortgage to Stockdale upon their property, including "all crops raised or to be raised", which was filed for record on March 29, 1954. The agreements between the Ingvalls and Olson were made on March 22, 1954; that is, prior to the date of the note and mortgage given to Stockdale. Olson, however, did not actually complete the advances until a few days after the 1954 planting but his advances were pursuant to and in reliance upon the agreements made with the Ingvalls on March 22, 1954.

The basic question here is whether the plaintiff Stockdale had a prior claim against the future 1954 crop ahead of Olson's interest as landlord under the arrangement of March 22, 1954.

Among other things not pertinent here and involving mainly those who were parties to the original action but are not parties to this appeal, the District Court held:

"* * * that there is not involved in this case the question of

equitable lien, contract lien, landlord's lien, or oral mortgage.

"It seems clear that under the Iowa law the relation between Roy Olson and the defendants Ingvall was that of landlord and tenant and not that of partnership. See 6 Drake Law Review 37 (1956); 8 Iowa Law Bulletin 95 (1922); Johnson v. Walland [Watland] (1929), 208 Iowa 1370, 227 N.W. 410; and Kelley v. Kelley (1920), 189 Iowa 311, 177 N.W. 45. See also, In re Estate of Schultz's (1923), 196 Iowa 125, 194 N.W. 242, on right of member of non-trading partnership to issue notes binding on firm. The relationship of partnership as to a portion of the property on a leased farm does not change the landlord-tenant relationship. Vosges v. Clark (1949), 240 Iowa 1108, 38 N.W.2d 611.

"The plaintiff's chattel mortgage provides that it shall attach the after-acquired property upon acquisition by the mortgagors. The plaintiff's chattel mortgage only attached to such interest as the defendants Ingvall had in the crop in question. McMaster v. Emerson (1899), 109 Iowa 284, 80 N.W. 389. The Iowa Supreme Court has used the terms 'potential property' and 'after-acquired property' synonymously. See 10 Iowa Law Bulletin 227 (1925).

"In the present case *the crops at the time they were planted and when they came up were subject to the leasing arrangements made between the defendant Olson and the defendants Ingvall under which the share of the latter in them would be diminished from what it had been under the arrangements for the prior years*. The plaintiff as an extraneous creditor had to take the situation as it existed. The defendants Ingvall and the defendant Olson had the right to make their own leasing arrangements for 1954. Under those arrangements the share of the defendants Ingvall was to be diminished for that year. The fact that the arrangements were to be carried out during the term of the lease and after the chattel mortgages to the plaintiff were executed does not change the situation. There is not involved in the case the question of co-owners of existing property making agreements in relation to common property to the prejudice of one who held a mortgage on the interest of one. In the present case the arrangements related to crops yet to be produced. The crop had not been produced by May, 1954. If nothing further had been done to them thereafter, no crops would have been produced or harvested. It would seem that where two parties enter into a joint arrangement for the production or fabrication of property to be brought into existence the rights of their individual creditors in the jointly produced or fabricated property would be subject to the arrangements made between the joint entrepreneurs for such production or fabrication.

"In the present case the plaintiff refused to make possible the production of the crops. Nevertheless he received the sum of $6,983.68 from the crops made possible by the defendant Roy Olson. In addition, the plaintiff in substance asks that the arrangements under and by virtue of which the crops were produced be ignored and that the share of the crops in question to which the defendant Roy Olson was entitled under his arrangements with the defendants Ingvall be also turned over to him (the plaintiff)." (Emphasis supplied.)

After so holding, the District Court then proceeded to demonstrate that under the law of Iowa the chattel mortgage " * * * under which the plaintiff claims a chattel mortgage lien as to the 1954 crops in controversy fails to meet the standards of description set by the Iowa Supreme Court." Citing cases from the Supreme Court of Iowa, the

trial court pointed out that plaintiff's mortgage was defective because of indefiniteness, because it failed to specify the year in which the future crops were to be raised, and because its terms could be construed as covering personal property located on land other than the land specifically described in the mortgage. The trial court concluded that the defendant Roy Olson " * * * was the unqualified owner of the corn * * * " in question and "the said chattel mortgage is not a lien upon the corn * * * ".

■ We concur in the trial court's holding that the corn in question was actually owned by Olson under his changed rental agreement for 1954 with the Ingvalls. The relationship between Olson and the Ingvalls was that of landlord and tenants. They had no signed written lease between them but after a fashion recognized a written but unsigned lease dated September 23, 1948. During the years subsequent to that date, however, they made oral deviations and separate arrangements different from the terms thereof. Plaintiff Stockdale had been financing the Ingvalls but in the fall of 1953 and the early part of 1954 he completely failed them and notified them of his refusal to further finance them. The Ingvalls' situation was desperate. Their creditors, other than Stockdale, were threatening. They were unable to purchase their half of the seed or to pay for the expense of putting it in. They told Olson they would have to give up the farm. Apparently with reluctance but nevertheless in order to insure the seeding of the 1954 crop, Olson agreed to advance the necessary money but with the specific understanding that in addition to his ordinary one-half share of the crop he would receive further crop sufficient to off-set the amount of such advantages. This was the agreement of March 22, 1954, and the one which Stockdale disputes. At that time, of course, the actual expenses were unascertainable. Nevertheless, the firmness of the agreement seems to be reflected in the fact that Ingvalls' creditors held off and

that the Ingvalls got the seed for the 1954 crop. Into that picture stepped the plaintiff Stockdale and obtained from the Ingvalls the chattel mortgage in question (actually a renewal of a prior mortgage), mortgaging their properties, including "all crops raised or to be raised". Such mortgage was subject to the agreement between Olson and the Ingvalls as to their landlord-tenant relationship and could not affect the landlord's share of the crops. The mortgage given by the Ingvalls to the plaintiff could attach only to property belonging to the Ingvalls and the trial court found that the two bins of corn here involved were actually owned by Olson, the landlord, as a result of the March 22, 1954, rearrangement of their crop division agreement.

We see absolutely no difference between the situation confronting the court here and one where the landlord and tenant have been going on for some years with an oral leasing arrangement whereby the tenant must furnish the seed and the landlord gets one-third of the crop. The tenant becomes financially unable to purchase the seed and the two orally agree to a change in the arrangements whereby the landlord's credit is used to buy the seed and in return he is to receive one-half the crop. The situation herein is exactly the same, except for a difference in proportionate shares.

■ We are convinced, as apparently the trial court was, that the applicable Iowa law, in respect to Stockdale's herein asserted chattel mortgage, is clearly set forth in the case of McMaster v. Emerson, 1899, 109 Iowa 284, 80 N.W. 389, wherein the Iowa Supreme Court said, at page 389 of 80 N.W.:

"A chattel mortgage on crops to be grown in the future is upheld on precisely the same principle as that upon goods not owned by the mortgagor. * * * Before the mortgage attaches, the crops in the one case, and the goods in the other, must come into existence *and be acquired by the mortgagor. Unless so acquired, the mortgage never be-*

*comes a lien, since there is no interest of the mortgagor which he might have conveyed.* As said by Mitchell, J., in a similar case (Simmons v. Anderson, 44 Minn. 487, 47 N.W. 52): 'When a person takes a mortgage on property in being, he acquires only the interest which the mortgagor has in it; and if he, as in this case, takes a mortgage on the property not then in being, or owned by the mortgagor, it can attach only to such property as the mortgagor thereafter acquires. A chattel mortgage on crops to be thereafter grown gives the mortgagor no interest in, or lien upon, the land. *It attaches as a lien only on the interest which the mortgagor may have in the crops when they come into being.*'" (Emphasis supplied.)

Recognizing, as we do, the March 22nd agreement, the potentiality of Stockdale's contemplated lien never materialized as pertains to the two bins of corn here in question. One cannot mortgage that which is not his to encumber.

■ In addition, it may be well to point out that the rights of the defendant Olson as landlord and owner of the farm are supported by strong equitable principles. If, in the fall of 1953 and the early part of 1954, Olson had not filled the gap left by Stockdale's refusal to further finance the Ingvalls, had not lent his credit and agreed to make the necessary advances, there would have been no 1954 crop and nothing over which the parties could now dispute. As indicated by the trial court, the plaintiff himself received $6,983.68 from the tenants' share of the 1954 crops made possible by the defendant Roy Olson's March 22, 1954, agreement with the tenants. Had Olson not made that agreement, Stockdale would have taken nothing because the tenants would have had nothing from which to take. By way of the result here reached, Olson has only received back that which he put out. The fact that the dollars and cents amount could not be ascertained or was not ascertained as of March 22, 1954, is immaterial. We think the able trial judge's conclusion sound and equitable and his fact determinations supported by substantial testimony which may not be disturbed on appeal. The scope of review by this court was thoroughly stated in Sherman Inv. Co. v. United States, 8 Cir., 1952, 199 F.2d 504, where we said, at page 506:

"In this court the action is not triable de novo. As has been observed, the court found the issues against the appellant and these findings are presumptively correct and can not be set aside unless found to be clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; United States v. Beatty, 8 Cir., 192 F.2d 945. Much of the evidence was the oral testimony of witnesses and it was the function of the trial court to decide on the weight of the testimony and the credibility of the various witnesses. We must assume that all conflicts in the evidence have been resolved in favor of the appellee and we must view the evidence in a light most favorable to the prevailing party. If, when so viewed, the judgment is sustained by substantial evidence and is not clearly against the weight of the evidence, the judgment should be sustained."

■ In view of the fact that we affirm the action of the trial court on the first premise, namely, that the corn in question was owned by the defendant Olson and the plaintiff's chattel mortgage could accordingly not attach thereto, we find it unnecessary to discuss the trial court's determination as to the invalidity of the plaintiff's chattel mortgage under the law of Iowa. At best, plaintiff has merely presented therein a disputed question of local law. Suffice it to say, as we said in Homolla v. Gluck, 8 Cir., 1957, 248 F.2d 731, 733:

"This case in principle differs in no controlling respect from others in which this Court has consistently refused to attempt to outpredict, outforecast or outguess a trial judge

with respect to a doubtful question of the law of his State. See and compare, Buder v. Becker, 8 Cir., 185 F.2d 311, 315; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243, [38 A.L.R. 2d 814]; Guyer v. Elger, 8 Cir., 216 F.2d 537, 540–541, certiorari denied 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728; Dierks Lumber & Coal Co. v. Barnett, 8 Cir., 221 F.2d 695, 697; Citizens Insurance Co. of New Jersey v. Foxbilt, Inc., 8 Cir., 226 F.2d 641, 643, 53 A.L.R.[2d] 1376; Bostian v. Universal C. I. T. Credit Corporation, 8 Cir., 238 F.2d 809, 812; Milwaukee Insurance Co. v. Kogen, 8 Cir., 240 F.2d 613, 615."

The judgment appealed from is affirmed.