CITY OF WEST PLAINS, MISSOURI,
Appellant,

v.

Rosella Mae LOOMIS, Appellee.

No. 16430.

United States Court of Appeals
Eighth Circuit.

June 29, 1960.

Horace S. Haseltine, Springfield, Mo., presented oral argument in behalf of appellant.

Case submitted on brief for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Plaintiff brought an action against the defendant city to recover damages on account of personal injuries sustained by her when she wedged her foot in a hole and fell on August 17, 1957, while descending concrete steps leading from a raised sidewalk on the north side of the West Plains Court Square, which fall she alleged was due to the negligence of the city in causing the steps to become and remain in a defective condition. Plaintiff's complaint additionally alleged that on November 8, 1957, she gave notice of this accident to the Mayor of West Plains, which notice was attached as Exhibit A to her complaint. Diversity of citizenship and the amount in contro-versy established federal jurisdiction. The defendant's answer denied all material allegations of plaintiff's complaint and additionally raised as an affirmative defense her contributory negligence. The trial court, sitting without a jury, found for the plaintiff and entered a judgment in her favor of $3,000.00, from which result this appeal followed.

As grounds for reversal, defendant contends that the notice given it by plaintiff was insufficient under § 77.600 of the Missouri Revised Statutes (1949), V.A. M.S., that there was no substantial evidence to support the trial court's conclusion that a defect sufficient to cause the accident existed in the step area nor that any such defect was the proximate cause of plaintiff's injury, and that, as a matter of law, the plaintiff was guilty of contributory negligence.

Turning first to the alleged insufficiency of plaintiff's notice, § 77.600 Mo.Rev.Stat. (1949), V.A.M.S. provides that:

"No action shall be maintained against any city organized under the laws of this state as a city of the third class on account of any injuries growing out of any defect or unsafe condition of or on any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city."

Plaintiff's notice thereunder was as follows:

"This is to notify you that Mrs. Rosella Mae Loomis of Crown Point, Indiana, was injured as a result of falling at the corner of Washington Avenue and Court Square in your city of West Plains on the 17th day of August, 1957. Mrs. Loomis was walking in an easterly direction

along the sidewalk around Court Square approaching Washington Avenue and in walking down the steps between the hours of 9:00 o'clock in the forenoon and 3:30 P. M. in the afternoon ste*ped* (sic) in a *w*hole (sic) in the concrete landing at the foot of the first *sires* (sic) of steps which threw her off balance, caused her to fall and as a result of which she sustained a broken leg.

"Mrs. Loomis claims damages against the city of West Plains for the injury sustained at the time and place aforementioned."

Defendant asserts that the notice failed to meet the statutory requirement of "stating the place where * * * such injury was received" as the notice placed the accident at the foot of the steps, whereas plaintiff's proof was that the occurrence took place at the second of three steps.

Esco Kell, city attorney for defendant, testified in regard to the notice that it had been received, following which an investigation of the accident had been conducted. He explained further that:

"* * * I surveyed the whole steps, the whole area in there, * *. We made measurements * * *. It was a little difficult from that to tell from which step or where she was claiming she fell. * * * I knew the general area where it was claimed she had the fall."

The District Court, in its Findings of Fact and Judgment, stated:

"I don't know of any requirement of the law in connection with notice to be given to a municipality of a claim under the statute authorizing such procedure that requires that you specify, by inches, the exact point where an injury is alleged to have occurred. I am mindful of the fact that the City is entitled to a sufficient notice so that they will be in a position to investigate and prepare for resisting the claim. I think under the evidence that is presented here in this case there can be no

question but that the notice was sufficient, and since it is admitted that it was timely given, I think the notice question is out of it."

The intent and function of the notice statute were well defined by the Missouri Court of Appeals in Snickles v. City of St. Joseph, 1909, 139 Mo.App. 187, 122 S.W. 1122, 1124, wherein the court explained that:

"The prime object of the statute * * * requiring the giving of notice in cases of this character, is to protect the city against fraudulent or stale demands. The city must be informed of the time, place, and circumstances of the injury in order that from the facts stated in the notice its officers may accurately investigate the merits of the claim. If the notice were so vague and indefinite in any of the particulars made essential by this statute as to be misleading, we would not hesitate declaring it bad. A claimant will not be permitted to thwart the intent of the statute by untruthfulness or indefiniteness when the true facts may be clearly stated. But the statute should be construed reasonably. Its design is to defeat unjust demands, not to lay pitfalls in the way of honest claimants. The city may use it as a shield, not as a sword; and, where it appears, as it does here, that the officers of the city with the information given in the notice could not be misled, but might go to the place and put a finger on the negligent defect that plaintiff declared caused her injury, *it would be a harsh and unjust rule that would deprive plaintiff of her cause of action because she failed to state the exact spot on which her injury was received.*" (Emphasis supplied.)

See, also, Cole v. City of St. Joseph, Mo. 1932, 50 S.W.2d 623, 82 A.L.R. 742. The rule of the Snickles decision that the notice statute be liberally construed in favor of the claimant has been applied in numerous instances. Glasgow v. City of St. Joseph, 1944, 353 Mo. 740, 184 S.W.

2d 412, 415; David v. City of St. Louis, 1936, 339 Mo. 241, 96 S.W.2d 353, 356, 106 A.L.R. 849; Koontz v. City of St. Louis, 1936, 230 Mo.App. 128, 89 S.W.2d 586, 588; Ballew v. City of St. Joseph, 1912, 163 Mo.App. 297, 146 S.W. 454, 455; Canter v. City of St. Joseph, 1907, 126 Mo.App. 629, 105 S.W. 1, 3. Additionally the statement in Snickles to the effect that the place of the injury need not be stated with exact precision was followed in Powers v. Kansas City, 1929, 224 Mo.App. 70, 18 S.W.2d 545, wherein the court held notice sufficient which alleged only that the accident occurred when the claimant stepped in a hole in a sidewalk crossing a bridge because the evidence showed only a single hole in the bridge walk so that the notice would allow the city to conduct an investigation which would result in the discovery of the defect. Conversely, in Krucker v. City of St. Joseph, 1916, 195 Mo.App. 101, 190 S.W. 644, 645, the court held notice insufficient which stated the place of injury as being only on a sidewalk block located between some two streets 420 feet apart, after first explaining:

> "Now suppose that the notice had stated some point at, or near which, the injury occurred, not necessarily by feet and inches, but with reasonable accuracy; the city, it may be, could have learned the walk was not in the condition asserted, and that there was no liability."

In the Snickles case itself notice stated only that the accident occurred midway on a walk between two streets, whereas the evidence showed that the occurrence happened three-fourths of the distance between the streets. This notice was deemed sufficient because the area indicated was not so great that the city, having conducted a diligent investigation, would be unable to locate the complained-of defect.

■ That the notice here was adequate to allow defendant a reasonable opportunity to learn the details of plaintiff's accident and prepare any defense they might have against the claim emanating from it was made evident by the testimony of Esco Kell to the effect that the entire step area had been surveyed by the city following the receipt of plaintiff's letter. Thus, if there were substantial evidence to support the conclusion of the finder of fact that a hole existed in the steps as alleged by plaintiff, then her notice must be deemed to have fulfilled the statutory requirements. Finally, it might be noted that the question of the sufficiency of the notice is one of local state law and that this court has said on numerous occasions that the trial court's resolution of such doubtful issues must be affirmed unless this court is clearly convinced that error has been made therein. Hawkeye-Security Ins. Co. v. Davis, 8 Cir., 1960, 277 F.2d 765, at page 770; Weiby v. Farmers Mutual Auto Ins. Co., 8 Cir., 1960, 273 F.2d 327, 331; Homolla v. Gluck, 8 Cir., 1957, 248 F.2d 731, 733–734. We find no error here and are convinced that the trial court's conclusion on this question was clearly correct.

■ Before discussing defendant's second, third and fourth allegations of error to the effect that there was no substantial evidence establishing its negligence nor that any such negligence was the proximate cause of plaintiff's injury and that plaintiff was herself, in any event, contributorily negligent as a matter of law, we should bear in mind that this court has frequently stated that in reviewing conclusions reached by the finders of fact the evidence adduced at trial will be viewed in the light most favorable to the prevailing party; all facts will be deemed proved which that party's evidence tended to prove; the prevailing party will be given the benefit of all favorable inferences which can reasonably be drawn from the facts proven; and all conflicts in evidence will be resolved in its favor. Hanson v. Ford Motor Co., 8 Cir., 1960, 278 F.2d 586, at pages 596–597; Thieman v. Johnson, 8 Cir., 1958, 257 F.2d 129, 130; Chicago Great Western Ry. Co. v. Scovel, 8 Cir., 1956, 232 F.2d 952, certiorari denied 352 U.S. 835, 77 S.Ct. 53, 1 L.Ed.2d 54; Coca Cola Bottling Co. v. Hubbard, 8 Cir.,

1953, 203 F.2d 859, 860. Having done so, those conclusions will not be set aside unless there is no substantial evidence to support them, or unless they are against the clear weight of the evidence, or unless they were induced by an erroneous view of the law. Stockdale v. Olson, 8 Cir., 1958, 261 F.2d 191, 196; Wilson v. New York Life Ins. Co., 8 Cir., 1958, 250 F.2d 649, 651; American Indemnity Co. v. Swartz, 8 Cir., 1957, 250 F.2d 532, 536; Fields v. Ross Oil Co., 8 Cir., 1957, 250 F.2d 498, 502.

■ The evidence adduced in the trial court was as follows: Elizabeth Kurth, sister of the plaintiff, testified that plaintiff and she were in defendant city on August 17, 1957, to shop and that immediately prior to the accident they were walking east on the north side of Court Square intending to cross a north-south street. She further stated that in order to get from the sidewalk level to the street level they had to descend three concrete steps at the northeast corner of the Square and that grass was growing about the outer edge of the second and third steps. She then explained that:

"* * * I was a step or two ahead of her—I don't know whether it was one, one and a half or two— I was ahead of her a little and she called me by name. She said, 'Wait! My foot is caught.' I turned around. She grabbed me by the shoulder and I turned around and there was her foot wedged into this here crack there.

"Q. Did you see her forcibly pull her foot from this hole in this area? A. I did. And seen the bones come up out of her foot when she was pulling.

* * * * * *

"Q. Did the grass cover this hole so that you couldn't see it? A. Up there, yes, where I showed you, that she caught her foot.

* * * * * *

"Q. Can you tell the Court approximately how wide this depression was that she got her foot caught in? A. It was around three inches, I should judge.

"Q. Did it actually wedge her shoe? A. It did.

"Q. Did you see it wedged? A. I did, because she couldn't get it out. She had to pull, to get it out, and her shoe did not come off her foot because it had a strap across the instep."

Mrs. Kurth identified Plaintiff's Exhibit 1, which was an enlarged photograph taken the day following the accident, showing that the concrete in the area where the accident was alleged to have occurred was cracked and had weeds growing from it. Additionally, she identified Plaintiff's Exhibits 2 through 5, which were also enlarged photographs of the general step area but which had been taken the following April at a time when the witness claimed the accident area had been filled in with some new cement and the weeds removed. On cross examination Mrs. Kurth admitted that there was nothing to prevent plaintiff from stepping where the concrete was smooth if she had taken an "awfully long step". Additionally, she stated that plaintiff "didn't fall at all" but that "she kind of lost her balance but she didn't fall because when she went to pick up her foot, she couldn't raise it." Mrs. Kurth also identified Defendant's Exhibits 1 and 2, which were photographs taken of the step area at an undetermined time and of which the witness was uncertain whether or not they represented the accident area as it appeared on the day of the fall.

Plaintiff herself testified that she was 61 years of age and that on the day of the accident she was in West Plains for the first time and was unfamiliar with the steps on which she fell. She explained the accident as follows:

"A. Well, I took a step down and my foot was caught, and this foot (indicating) was going out from under me, and I fell backward and somebody grabbed me by the arm and I grabbed my sister by the shoulder; otherwise I might have fell down.

"Q. At the time that you took your first step, Mrs. Loomis, to go down this flight of steps, did you look to see where you were stepping? A. Yes, sir.

"Q. What did you see? A. Well, I seen some grass and weeds around there and I stepped on the grass, by the grass.

"Q. Did you know that there was a crack or a depression or a hole underneath the grass at the time you stepped on it? A. No, not until I stepped on it.

"Q. When you stepped on the grass did it give way beneath you? A. Yes; my foot wedged."

She corroborated Mrs. Kurth's testimony that Plaintiff's Exhibit 5 did not show the steps in the same condition as they were in on the day of the accident. On cross-examination she testified as follows:

"Q. And you put your foot right in that grass? A. Yes, sir.

"Q. Now, you say you stepped down first with your left foot? A. I put my left foot down, then I come with my right.

"Q. Then you put your right foot down? A. Yes, sir.

"Q. Then what did you do? A. And my foot was caught and I never went any farther.

"Q. After you put your right foot down, then did you lift your left foot up there? A. Yes, sir.

"Q. And started to take a step? A. Yes, sir, and my foot was caught.

"Q. And the right foot was caught? A. Yes, sir, and this foot (indicating) begun to come out from me.

"Q. Excuse me. Your left foot slipped out from under you? A. Yes, sir; I kept sliding back.

"Q. What did it slide on? A. On the sidewalk or the step, I don't know what it was, but it was sliding like this (indicating), and I went

way back and somebody grabbed me by the arm and my arm was black and blue, and I grabbed for my sister.

\* \* \* \* \* \*

"A. Well, I was pulling my foot and this left foot started to go down and I started to put the pressure. I couldn't pull this foot (indicating) out; it was stuck. And when it was that way, I begun to go backward, went way back and somebody grabbed me by my arm, and I grabbed my sister. She was right ahead of me.

"Q. Actually, didn't your left foot slip? A. Yes, sir, it slipped.

"Q. On the pavement? A. But——

"Q. Isn't that what caused the left foot to slip out from under you and isn't that what caused you to fall backwards? A. No, sir; my foot was caught."

In response to plaintiff's interrogatories, Eldon Collins, Chief of Police of defendant city, admitted that on August 17, 1957, the "sidewalk was slightly cracked and uneven, but not jagged or deep enough to cause a fall of any person watching or paying ordinary attention to where they were walking" and that "The sidewalk has been that way as long as I can remember." He stated further that:

"There may have been a few weeds near the mail box, but none that would hinder the walkway",

and that he could not remember the particular time when he first noticed them. He denied that any change had been made in the condition of the step area since the date of the accident. Chief Collins also testified on behalf of defendant that he had examined the area the day following plaintiff's fall and also after defendant received her notice of the accident and found no hole present at either time. On cross-examination he admitted that the steps on the day of plaintiff's fall contained broken pieces of concrete and that there was a depression

on the second step approximately one-half inch deep.

Miller Amick, a construction foreman, also appeared as a witness for defendant and testified that he had examined the step area and found only a depression on the second step measuring approximately two and a half inches long, an inch and a half wide and one-half inch deep. He further stated that no hole had been repaired in the step area since August 17, 1957. On cross examination he admitted that he had been an employee of the city since 1952 and that the irregular condition of the second step he described had existed since that time.

Concluding the defendant's case, Roy Marshall testified that he had been an employee of the City of West Plains since 1953 and that during that period no repair work had been done on the step area.

The trial court's Findings of Fact and Judgment concluded:

"I have examined particularly Defendant's Exhibit 1, which is the enlarged photograph with the two yardsticks laid at right angles to the juncture of what I guess is step No. 2. Apparently that represents to some extent, or perhaps to the only extent that can be designated by a photograph, the area where the incident is alleged to have occurred. I hesitate to rely entirely on a photograph. It is a little difficult from examining this photograph to say how her foot might have been wedged in this opening, but the testimony that is uncontradicted in the record is that in that area somewhere her foot was wedged so that it could not be removed.

"I think the evidence from these photographs indicates a sufficient defect in the sidewalk, admittedly in existence for a period of at least four years prior to the time of the accident, which would put the City on notice that it was a dangerous condition, and for that reason the verdict will be for the plaintiff."

Considering first defendant's allegation that there was not substantial evidence to support the conclusion that a hole existed in the second step sufficient to cause plaintiff's foot to become wedged, there was a direct conflict in the testimony as to whether or not the photographic exhibits accurately represented the sidewalk area as it appeared on the date of the accident. It is, however, beyond dispute that the concrete steps were cracked and uneven and that there were weeds growing from some portions of them. Moreover, plaintiff and witness Kurth testified unequivocally that plaintiff's right foot became wedged in a depression on the second step. That being so and in the light of the fact that the evidence must be viewed most favorably to plaintiff and that all conflicts therein be resolved in her favor, we are compelled to conclude that there was substantial evidence upon which the conclusion of the trial court could rest and that reasonable men could not come to but the single conclusion that a hole sufficient for plaintiff's foot to become wedged in did not exist on the day of the accident. The trial court having so found, it correctly ruled that the city was negligent in its maintenance of the walk, for, as the court declared in Megson v. City of St. Louis, Mo.1924, 264 S.W. 15, 23:

"The city is bound, as an active and continuous duty, by adequate inspection, to ascertain and appraise and provide against the dangers thereof by making such repairs or installing such protections as will furnish the traveler a reasonably safe walk; * * *."

See, also, Lithegner v. City of St. Louis, Mo.App.1939, 125 S.W.2d 925, 929; Shopbell v. City of St. Joseph, 1932, 226 Mo.App. 1170, 49 S.W.2d 301, 304.

■ Defendant next urges that the hole in the walk could not have been the proximate cause of plaintiff's fall because the accident occurred after she had placed her right foot on the second step and started to move forward with her left foot, which action would have caused her to fall forward, whereas plaintiff's evidence was that she fell backward, which fact is alleged to be consistent with

slipping only. We think plaintiff's explanation of the accident was, however, plausible and reasonable wherein she stated that she slipped and fell backward only *after and because of* the fact that she wedged her right foot in the concrete. That being so, the defect in the step must be deemed the proximate cause of plaintiff's injury as that term has been defined as:

> "* * * that cause which, operating in natural and continuous sequence, unbroken by any completely superceding independent intervening cause, produced the result complained of, and without which the result would not have occurred." Dowell v. City of Hannibal, Mo.App. 1947, 200 S.W.2d 546, 555, reversed on other grounds, 357 Mo. 525, 210 S.W.2d 4. Louisville & N. R. Co. v. Beatrice Foods Co., Mo.App.1952, 250 S.W.2d 825, 828; Wright v. Spieldoch, 1956, 354 Mo. 1076, 193 S. W.2d 42, 46.

In this connection defendant relies on Maxwell v. Kansas City, 1932, 227 Mo. App. 234, 52 S.W.2d 487, wherein the issue was whether or not the claimant tripped *or* slipped on a down-grading sidewalk in view of the fact that she fell backward, which question because of that factor was resolved in favor of the defendant city. In the instant case tripping and slipping are in no way inconsistent with one another. We, therefore, find that there was substantial evidence to support the trial court's conclusion that the hole was the proximate cause of plaintiff's fall.

■ Defendant finally contends that plaintiff was guilty of contributory negligence as a matter of law in voluntarily and knowingly stepping upon a defect in the step when there was an obvious and safe alternative route available to her. For this proposition, it relies primarily upon Snyder v. Kansas City, 1923, 218 Mo.App. 24, 262 S.W. 695. However, there the plaintiff stepped in what she knew to be a hole, with the thought that she could nonetheless pass over it safely. In the instant case there was no evidence that plaintiff was aware that the grass growing from the sidewalk upon which she stepped concealed a hazardous defect. That being so, the decision in Megson v. City of St. Louis, supra, 264 S.W. at page 23, is controlling, wherein the court declared that the duty of a pedestrian is:

> "* * * only to use such care for his own safety as a person of ordinary prudence would do under the circumstances. It was no part of the legal duty of the plaintiff to search out or discover latent defects or search for and discover latent dangers even of known defects; and, absent knowledge of such dangers, he may presume that the city has done its duty and adequately provided against dangers not open and obvious to him in the use of the walk."

Similarly, in Kirk v. Kansas City, Mo. App.1939, 128 S.W.2d 1128, 1133, the court explained in reference to the alleged contributory negligence of a pedestrian that:

> "The rule in reference to this matter is that if a pedestrian has no knowledge of a defect he has a right to assume that the sidewalk is in a reasonably safe condition and is not required to search for a possible defect or make of himself a sidewalk inspector, but is required to do nothing more than to conduct himself as reasonably prudent persons do under the circumstances."

There is no evidence that plaintiff was not proceeding with due care as she descended the steps at the end of the walk. We therefore, conclude that defendant's contention that plaintiff was guilty of contributory negligence as a matter of law is without substance.

The judgment appealed from is affirmed.