Thomas KOZIOL, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 79 C 4669.

United States District Court, N. D. Illinois, E. D.

Feb. 2, 1981.

---

Timothy R. Ocasek, Cooney & Stenn, Chicago, Ill., for plaintiff.

Michael S. O'Connell, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In this case, a personal injury action under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, plaintiff Thomas Koziol seeks damages for injuries sustained in an automobile collision between Koziol and a truck belonging to the United States Postal Service. The government has moved to dismiss for lack of subject matter jurisdiction on the ground that Koziol failed to file a timely claim with the Postal Service within the two-year period provided by the statute of limitations, 28 U.S.C. § 2401(b). For the reasons stated below, the motion to dismiss is denied.

■ The facts of the current dispute, in essence, are these: In 1976, plaintiff filed an Administrative Claim for Injuries ("Form 95"), along with a physician's report and medical bills with the Postal Service. While the supporting exhibits satisfied all regulatory requirements for tort claims (see, 28 C.F.R. § 14.4(b)(1)(5); 39 C.F.R. § 912.7(b)), because Koziol did not request a "sum certain" in damages his Form 95 was declared deficient by the agency. As a result a copy of the Form 95 and the originals of his exhibits were returned to him with instructions to perfect his claim. Koziol subsequently filed a new Form 95 requesting $22,000 but, despite being specifically instructed to do so by the Postal Service, he failed to resubmit to the Postal Service the exhibits until the limitations period had expired.[1] Thus, the circumstances are that the Postal Service ultimately received conforming copies of the

---

1. Plaintiff's counsel has now attached a letter dated November 14, 1977 to his memorandum in opposition to the government's motion to dismiss. This letter appears to be a cover letter to the Postal Service indicating that the physician's report and medical bills in question were being sent to the agency on that date. Until the instant motion, plaintiff had never referred to this letter which, if true, would indicate that the claim had been perfected during the limitations period. The letter, however, is unaccompanied by any affidavit or other competent proof which might attest to its authenticity. Also, the letter is unsigned. There is no record of this correspondence in the government's files. As such, the letter is not competent to contradict sworn testimony in the government's affidavit which states that the exhibits in question were never returned to the Postal Service until April 9, 1979.

Form 95 and its supporting exhibits, but never at the same time. After one suit was filed and then voluntarily dismissed upon the suggestion of the Postal Service, this suit was filed more than six months after the Postal Service acknowledges it received the resubmitted exhibits.

Pursuant to 28 U.S.C. § 2679(a), claims against the United States Postal Service must be brought as actions against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674. That Act provides that prior to suit such claims must be first presented by the claimant to the appropriate federal agency and denied by the agency in writing, although the claimant may consider the agency's failure to make final disposition of the claim within six months of its filing to be a denial of the claim, 28 U.S.C. § 2675. The claim must be "presented in writing to the appropriate Federal Agency within two years after such claim accrues . . ." and any action must be initiated within six months after final administrative denial. 28 U.S.C. § 2401(b).

 It is beyond dispute that filing a proper claim with the appropriate agency within the two year limitations period is a jurisdictional prerequisite to suit under the Federal Tort Claims Act. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972). The statute is a Congressional waiver of sovereign immunity and, accordingly, that waiver is only as broad as Congress intended. *United States v. Kubrick*, 441 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

The government's motion to dismiss is predicated upon the Regulations of the Postal Service. It contends that the first Standard Form 95, Claim for Damage or Injury, did not comply with 28 C.F.R. § 14.2 and 39 C.F.R. § 912.5 because it did not claim "a sum certain . . . for personal injury," as required by these regulations. The Postal Service thereupon retained a copy of the Form 95 as filed and returned medical and wage exhibits to the claimant. Thereafter, plaintiff through counsel submitted a second Form 95 in which the specific sum of $22,000 was claimed. The Postal Service then lacked the medical and wage exhibits required by 28 C.F.R. § 14.4 and 39 C.F.R. § 912.7 and, due to plaintiff's failure to resubmit those exhibits within the two year period, although requested to do so, the government claims that the claim was not perfected within the limitations period and that this Court is therefore without subject matter jurisdiction.

That the claim must conform to the administrative regulations to be a written claim within the meaning of 28 U.S.C. § 2401(b) finds considerable support in the precedent. Failure of a lay person to specify a sum certain for a personal injury was his undoing in *Bialowas v. United States*, 443 F.2d 1047 (3rd Cir. 1971). Similarly, failure to specify $1,000,000 as the sum demanded by after-added claimants disqualified their claims in *House v. Mine Safety Appliances Co.*, 573 F.2d 610 (9th Cir. 1978), even though their counsel had invariably claimed that amount for each of the initial claims resulting from a common mine disaster. Accord, *Hlavac v. United States*, 356 F.Supp. 1274 (N.D.Ill.1972). Similarly, the failure to submit medical exhibits defeated plaintiff's claim in *Kornbluth v. Savannah*, 398 F.Supp. 1266 (E.D.N.Y.1975). Accord, *Rothman v. United States*, 434 F.Supp. 13 (C.D.Calif.1977).

Other courts, in permitting cases to go forward, have emphasized that technical defects in claims were promptly cured even though not within the two year period, *Apollo v. United States*, 451 F.Supp. 137 (M.D.Pa.1978); or that the mistake was a clerical error known to the government, *Little v. United States*, 317 F.Supp. 8 (E.D. Pa.1970); or that the defect was not called to the claimant's attention, *Hunter v. United States*, 417 F.Supp. 272 (N.D.Calif.1976). Even there, however, the courts have struggled with the concept of jurisdiction within the context of agency regulations.

The denial of jurisdiction has, from time to time, been accompanied by expression of sentiments reminiscent of an ancient epoch in which all rights flowed from the largess of a gracious sovereign.

It may be that appellant did in fact sustain personal injury and property damage at the hands of a Government employee. Though sovereign, the Government considerately provided him with convenient and expeditious machinery for settlement of his alleged damages and injuries. Unfortunately for him, he repeatedly disregarded written and oral instructions and eventually became the architect of his own misfortune. *Bialowas v. United States, supra,* at p. 1050.

The issue, however, is not whether the plaintiff acted with due appreciation for the sovereign's grace. Nor, as pointed out in *Apollo v. United States, supra,* at p. 138, are the requirements of the statute and the regulations necessarily indistinguishable. Rather, the question is whether plaintiff filed a claim within the meaning of 28 U.S.C. § 2401(b) within two years of his alleged injury. This court believes that he did.

On January 3, 1977, within three months of the accident, the Postal Service was advised in writing by Thomas Koziol that he had suffered a broken nose, which required surgery, in a specified rear end collision with a postal vehicle on October 5, 1976 while driving the truck of another, that he had specified medical expenses, as indicated by enclosed copies of bills and a surgeon's report, that he had been away from work for a specified period as a result and that he had lost a specified amount of wages during that period. At that time, in short, the Postal Service had ample notice of a personal injury claim arising from a specified occurrence, of the nature of the claim and of the "specials" arising from that claim. It had, at that point, sufficient information to initiate an investigation to determine if the Postal Service may have been at fault, to deny the claim if it concluded that the Postal Service was not at fault and to enter into settlement negotiations if it concluded that the Postal Service was legally vulnerable. Specifying a sum certain at some point was a predicate to suit, since a suit normally cannot be for more than the amount administratively claimed. 28 U.S.C.

§ 2675(b). Nor, obviously, was the Postal Service under any obligation to make an offer of settlement unless the documentation provided to it justified the offer. That is, however, far different from insisting that a written personal injury claim which does not specify an amount is no claim at all. Common experience teaches us that the amount first demanded is less a measure of the value of a claim than of a lawyer's flamboyance. Indeed, under the Federal Rules of Civil Procedure the demand is separate and distinct from the claim. Rules 8 and 54(c).

The legislative history of the Federal Tort Claims Act amendments of 1966 does not support the judicial obeisance to administrative regulations which the government urges here and which it has successfully urged in the past. That legislative history is set forth in 1966 U.S.Code Cong. & Admin.News at pp. 2515–2527.

Prior to those amendments any claims over $2,500 could not be administratively resolved. Mindful that the great majority of claims in excess of that amount were eventually settled after litigation commenced, Congress authorized an administrative settlement procedure which permitted such claims to be resolved without requiring citizens to resort first to the courts. While anticipating and intending that the amendments would reduce court congestion, the reports do not suggest that the central purpose of the changes was, as stated in *Robinson v. United States Navy,* 342 F.Supp. 381 (E.D.Pa.1972), ". . . to spare the Court the burden of trying cases . . ." *i. e.,* a provision for the relief of judges and courts. *Id.* at 383. Rather, the Congress specifically stated that the amendments had ". . . the common purpose of providing more fair and equitable treatment of private individuals and claimants when they deal with their Government." S.Rep.No.1327, 89th Cong. 2d Sess. 1, reprinted in 1966 U.S.Code Cong. & Ad.News 2515, 2515–2516 (hereinafter "Leg. Hist."). That the primary purpose of the amendments was to benefit claimants seeking relief from their government, but with resulting collateral benefits as well, is

underscored by the Senate Committee's observations that "the bill would not only benefit private litigants, but would also be beneficial to the courts, the agencies, and the Department of Justice itself." Leg. Hist. at 2516.

The notice provisions are explicitly referred to in the Senate report. Their purpose is " '. . . to protect the municipality from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit. (McQuillan, Municipal Corporations (3d ed.). section 53.153).' " Leg. Hist. at 2517. The passage upon which the Senate report relies goes on to state:

> "By means thereof the municipality is given an opportunity to determine whether it prefers to adjust the claim without suit or to contest its validity in the courts. However, it is not intended that such a provision be used as a sword to defeat the rights of a person having a legitimate claim; its purpose is as a shield to protect the municipality against spurious claims. If the claim is not just and litigation is necessary, such provisions enable cities to get their proof in hand before the witnesses scatter, and while the facts are fresh in their minds."

See *City of West Plains, Missouri v. Loomis,* 279 F.2d 564 (8th Cir. 1960).

The amendments were intended to provide a framework conducive to the administrative settlement of claims, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits. Such a framework presupposes that not all claimants will be equally diligent and thorough in the prosecution of their claims administratively any more than all claimants will be equally reasonable in attempting to reach agreement before turning to the courts. That such a framework is conducive to the administrative settlement of most claims does not mean that all claims will, or must, follow precisely the same course to grant or denial.

The inattention of plaintiff's counsel to the directions of the Postal Service to follow the regulations is manifest. The penalty suffered by the dilatory claimant is well illustrated here. Mr. Koziol might possibly have resolved his aging dispute with the Postal Service years ago in a manner satisfactory to him if there had been prompt compliance with agency procedures. Instead, he has but a claim in court, a claim occupying the attention of his attorneys and very much in contention.

The cases upon which the government relies are, perhaps, a reflection of a reluctance to let go of the incidents and language of the concept of sovereign immunity. But Congress expressly did waive that immunity in cases of this nature. It evidenced no intention that the courts should act with greater rigidity with respect to claims against the sovereign than with respect to claims against the sovereign's ministers or servants. *Contrast Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), *Murray v. City of Chicago,* 634 F.2d 365 (7th Cir. 1980); *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir. 1973). See *City of West Plains, Missouri v. Loomis, supra.*

The Federal Tort Claims Act requires that the claimant give notice to permit the government to investigate the matter in a timely fashion and to permit negotiations in an effort to resolve the claim without litigation if the government determines there is some merit to the claim. Plaintiff's notice in 1977 was sufficient for those purposes, and he is properly now before this court.